**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------------------x
FAITH MILLER-SETHI,

                                        Plaintiff,

          vs.                                                                    21-CV-08591 (JPO)

CITY UNIVERSITY OF NEW YORK, DANI MCBETH,
NANCY SOHLER and ERICA FRIEDMAN,

                                        Defendants.
-------------------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**AMENDED COMPLAINT**

                                   LETITIA JAMES
                                   Attorney General
                                   State of New York
                                   *Attorney for Defendants*
                                   28 Liberty Street
                                   New York, NY 10005
                                   (212) 416-6286

                                   Jaclyn D. Saffir
                                   Assistant Attorney General
                                   Of Counsel

## TABLE OF CONTENTS

Page (s)

TABLE OF AUTHORITIES ...................................................... iii

PRELIMINARY STATEMENT ................................................. 1

STATEMENT OF ALLEGED FACTS ........................................ 2

STANDARD OF REVIEW ...................................................... 9

ARGUMENT ......................................................................... 9

I.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR EMPLOYMENT DISCRIMINATION AGAINST CUNY UNDER TITLE VII .................................. 9

    a.   The only adverse employment action against Plaintiff was her non-reappointment ............................................................................ 10

    b.   Plaintiff has not alleged a plausible inference of discrimination in connection with her non-reappointment .............................................................. 12

II.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM AGAINST CUNY FOR RETALIATION UNDER TITLE VII ........................................... 15

    a.   The only materially adverse employment action taken against Plaintiff is her non-reappointment ............................................................................ 16

    b.   Plaintiff has failed to sufficiently allege that her non-reappointment was the product of retaliation ......................................................................... 17

III.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM AGAINST CUNY FOR HOSTILE WORK ENVIRONMENT UNDER TITLE VII. ...................................... 20

IV.   PLAINTIFF FAILS TO STATE A CLAIM OF DISCRIMINATION OR RETALIATION AGAINST CUNY UNDER TITLE VI ........................................... 21

    a.   Plaintiff fails to satisfy the threshold requirement of a Title VI employment claim ......................................................................................... 21

    b.   Plaintiff fails to adequately allege the other elements of a Title VI claim ........ 23

V.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS UNDER FEDERAL OR STATE LAW ......................................... 25

a.    Plaintiff's § 1981, § 1983 and NYSHRL claims are defective for the same reasons as her Title VII claims.................................................................. 25

b.    There is no § 1981 private right of action against the Individual Defendants.... 25

c.    Plaintiff fails to show Individual Defendants had requisite personal involvement for liability under § 1983 .................................................................... 26

d.    The Individual Defendants are not subject to liability under the NYSHRL....... 27

VI.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS UNDER THE NYCHRL ................................................................ 27

a.    NYCHRL claims are barred by sovereign immunity.......................................... 28

b.    Plaintiff Does Not Satisfy the Standard for Stating a Claim under the NYCHRL ............................................................................................................ 28

CONCLUSION.................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ajoku v. N.Y.S. O.T.D.A.*,
   2020 WL 886160 (Sup. Ct. N.Y. Cnty. Feb. 20, 2020) ........................................................28

*Anderson v. Davis Polk & Wardwell LLP*,
   850 F. Supp. 2d 392 (S.D.N.Y. 2012)...........................................................................12, 13, 14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................................9

*Assoc. Against Discrimination in Emp., Inc. v. City of Bridgeport*,
   647 F.2d 256 (2d Cir. 1981)...................................................................................................22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................9, 10, 15

*Benziger v. Lukoil Pan Americas, LLC*,
   —— F.3d ——, 2020 WL 1322478 (S.D.N.Y. Mar. 20, 2020)...............................................29

*Bertoldi v. State of N.Y.*,
   275 A.D.2d 227 (1st Dep't 2000) ...........................................................................................28

*Bhanusali v. Orange Reg'l Med. Ctr.*,
   No. 10 Civ. 6694(CS), 2013 WL 4828657 (S.D.N.Y. Aug. 12, 2013)..................................15

*Biswas v. City of New York*,
   973 F. Supp. 2d 504 (S.D.N.Y. Sept. 30, 2013) ....................................................................24

*Bright v. Coca-Cola Refreshments USA, Inc.*,
   No. 12 Civ. 234, 2014 WL 5587349 (E.D.N.Y. Nov. 3, 2014), *aff'd sub nom.*,
   639 F. App'x 6 (2d Cir. 2015) ................................................................................................30

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001)......................................................................................................9

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006)...................................................................................................................15

*Chertkova v. Connecticut Gen. Life Ins. Co.*,
   92 F.3d 81 (2d Cir. 1996).........................................................................................................12

*Commodari v. Long Island Univ.*,
   89 F. Supp. 2d 353 (E.D.N.Y. 2000) ......................................................................................22

*Cruz v. Coach Stores, Inc.*,
   202 F.3d 560 (2d Cir. 2000)..........................................................................................25

*Davis v. Oyster Bay–East*,
   No. 03–CV–1372, 2006 WL 657038 (E.D.N.Y. Mar. 9, 2006), *aff'd,* 220 Fed.
   Appx. 59 (2d Cir. 2007)................................................................................................25

*De Figueroa v. New York*,
   2019 WL 4221181 (S.D.N.Y. Sept. 5, 2019)................................................................27

*Deras v. MTA*,
   No. 11 Civ. 5912(RRM)(CLP), 2013 WL 1193000 (E.D.N.Y. Mar. 22, 2013)....................14

*Diaz v. City Univ. of N.Y.*,
   2016 WL 958684 (S.D.N.Y. Mar. 8, 2016) ..................................................................24

*Dillon v. Ned Mgmt., Inc.*,
   85 F.Supp.3d 639 (E.D.N.Y. 2015) ..............................................................................30

*Dooley v. JetBlue Airways Corp.*,
   636 Fed. Appx. 16 (2d Cir. 2015) ................................................................................13

*Duplan v. City of New York*,
   888 F.3d 612 (2d Cir. 2018)..........................................................................................25

*Edwards v. Elmhurst Hosp. Ctr.*,
   08 CV 3686 (LB), 2010 WL 11623370 (E.D.N.Y. Sept. 21, 2010) ........................20

*Edwards v. Jericho Union Free School Dist.*,
   904 F. Supp. 2d 294 (E.D.N.Y. 2012) ..........................................................................26

*Emengo v. State*,
   2015 WL 13828373 (Sup. Ct. N.Y. Cnty. 2015) ........................................................28

*Feingold v. New York*,
   366 F.3d 138 152-53 (2d Cir. 2004) ............................................................................11

*Fields v. N.Y.C. Health & Hosp. Corp.*,
   No. 17 Civ. 6042 (PKC), 2018 WL 3518506 (E.D.N.Y. July 20, 2018) (Chen, J.) ...............18

*Gonzalez v. City of New York*,
   377 F. Supp. 3d 273 (S.D.N.Y. 2019)...........................................................................26

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir.2000)..............................................................................................14

*Gronowski v. Spencer*,
   424 F.3d 285 (2d Cir. 2005)..........................................................................................26

*Hahn v. Bank of Am. Inc.*,
  No. 12 Civ. 4151(DF), 2014 WL 1285421 (S.D.N.Y. Mar. 31, 2014), *aff'd*,
  607 F. App'x 55 (2d Cir. 2015) ........................................................................................17

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993)............................................................................................................20

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009).................................................................................................9

*Henry v. N.Y.C. Health & Hosp. Corp.*,
  18 F. Supp. 3d 396 (S.D.N.Y. 2014)........................................................................11, 14, 15

*Hernandez v. City of New York*,
  No. 11 Civ. 3521(SJ)(RER), 2013 WL 593450 (E.D.N.Y. Feb. 13, 2013) ............................14

*Hicks v. Baines*,
  593 F.3d 159 (2d Cir. 2010).........................................................................................16, 17

*Isbell v. City of New York*,
  316 F.Supp.3d 571 (S.D.N.Y. 2018)..................................................................................30

*Jett v. Dallas Indep. Sch. Dist.*,
  491 U.S. 701 (1989)..........................................................................................................25

*Johnson v. City of New York*,
  No. 17 Civ. 7585 (PKC), 2019 WL 4468442 (E.D.N.Y. Sept. 18, 2019) (Chen, J.)..............13

*Johnson v. County of Nassau*,
  411 F. Supp. 2d 171 (E.D.N.Y. 2006) ....................................................................21, 22, 23

*Kajoshaj v. N.Y.C. Dep't of Educ.*,
  543 Fed. Appx. 11 (2d Cir. 2013)......................................................................................24

*Khalil v. State of N.Y.*,
  17 Misc. 3d 777 (Sup. Ct. N.Y. Cnty. 2007) ......................................................................28

*Kotcher v. Rosa & Sullivan Appliance Ctr.*,
  957 F.2d 59 (2d Cir. 1992)................................................................................................17

*Kraiem v. JonesTrading Instit. Servs. LLC*,
  2021 WL 2134818 (S.D.N.Y. May 26, 2021) ......................................................................27

*Levitant v. N.Y.C. Hum. Res. Admin.*,
  558 F. App'x 26 (2d Cir. 2014) .........................................................................................17

*Littlejohn v. City of New York*,
  795 F.3d 297 (2d Cir. 2015)........................................................................................10, 20

*Lopez v. City of New York*,
    No. 14 Civ. 3285 (NGG), 2016 WL 3129184 (E.D.N.Y. June 2, 2016) ...............................18

*Mandell v. County of Suffolk*,
    316 F.3d 368 (2d Cir. 2003)........................................................................................13, 14

*Mathirampuzha v. Potter*,
    548 F.3d 70 (2d Cir. 2008)........................................................................................10

*Mazurkiewicz v. N.Y.C. Health & Hosp. Corp.*,
    No. 09 Civ. 5962 (WHP), 2010 WL 3958852 (S.D.N.Y. Sept. 16, 2010) ...........................18

*Mazzella v. RCA Glob. Commc'ns, Inc.*,
    642 F. Supp. 1531 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987) ........................13

*McCrudden v. E\*Trade Fin. Corp.*,
    No. 13-CV-8837 (WHP), 2014 WL 3952903 (S.D.N.Y. Aug. 12, 2014) ...........................24

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)........................................................................................25

*McGuinness v. Lincoln Hall*,
    263 F.3d 49 (2d Cir.2001)........................................................................................14

*McMenemy v. City of Rochester*,
    241 F.3d 279 (2d Cir. 2001)........................................................................................15

*Meder v. City of New York*,
    05 CV 919 (JG), 2007 WL 1231626 (E.D.N.Y. Apr. 27, 2007)...........................................21

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)........................................................................................29

*Milione v. City Univ. of N.Y.*,
    950 F. Supp. 2d 704 (S.D.N.Y. 2013)........................................................................................22

*Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*,
    19 CV 00179, 2020 WL 5659438 (S.D.N.Y. Sept. 23, 2020) ...........................................21

*Moore v. City of New York*,
    2017 WL 35450 (S.D.N.Y. Jan. 3, 2017) ........................................................................................22, 23

*Moore v. City of New York*,
    2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017) ...........................................22

*Nieblas-Love v. N.Y.C. Hous. Auth.*,
    165 F. Supp. 3d 51 (S.D.N.Y. 2016)........................................................................................26

*Norville v. Staten Island Univ. Hosp.*,
    196 F.3d 89 (2d Cir.1999)................................................................14

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007)...................................................9, 10, 20

*Patrowich v. Chem. Bank*,
    63 N.Y. 2d 541 (N.Y. 1984) ............................................................27

*Perks v. Town of Huntington*,
    251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ...........................................27

*Purdie v. City Univ. of N.Y.*,
    2015 WL 129552 (S.D.N.Y. Jan. 8, 2015) ......................................28

*Raspardo v. Carlone*,
    770 F.3d 97 (2d Cir. 2014).....................................................13, 20, 26

*Rhee-Karn v. Burnett*,
    No. 13 Civ. 6132 (JPO), 2014 WL 449126 (S.D.N.Y. Sept. 12, 2014)...................................2

*Risco v. McHugh*,
    868 F.Supp.2d 75 (S.D.N.Y. 2012) .............................................18, 19

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
    743 F.3d 11 (2d Cir. 2014).............................................................16

*Robles v. Goddard Riverside Cmty. Ctr.*,
    08 CV 4856(LTS)(JCF), 2009 WL 1704627 (S.D.N.Y. June 17, 2009) ...............................26

*Rojas v. Roman Catholic Diocese of Rochester*,
    660 F.3d 98 (2d Cir.2011)...............................................................19

*Ruhling v. Tribune Co.*,
    No. CV 04–2430(ARL), 2007 WL 28283 (E.D.N.Y. Jan. 3, 2007) .......................................19

*Ruiz v. County of Rockland*,
    609 F.3d 486 (2d Cir. 2010).............................................................25

*Russo v. New York Presbyterian Hosp.*,
    972 F.Supp.2d 429 (E.D.N.Y. 2013) .................................................29

*Saliba v. Five Towns Coll.*,
    991 F. Supp. 2d 449 (E.D.N.Y. 2014) ...........................................16, 20

*Sanders v. N.Y.C. Hum. Res. Admin.*,
    361 F.3d 749 (2d Cir. 2004)..........................................................10, 11

*Shumway v. United Parcel Serv., Inc.*,
   118 F.3d 60 (2d Cir.1997)...........................................................................................12, 14

*Springs v. City of New York*,
   No. 19 CIV. 11555 (AKH), 2020 WL 3488893 (S.D.N.Y. June 26, 2020) .....................29, 30

*Sumner v. U.S. Postal Serv.*,
   899 F.2d 203 (2d Cir. 1990)................................................................................................17

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
   663 F.3d 556 (2d Cir. 2011)...........................................................................................16, 17

*Thomas v. iStar Fin.*,
   438 F.Supp.2d 348 (S.D.N.Y. 2006)....................................................................................19

*Thomas v. iStar Fin.*,
   629 F.3d 276 (2d Cir. 2010)................................................................................................19

*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013)............................................................................................................15

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)..............................................................................10, 12, 15, 25

*Weeks v. New York Div. of Parole*,
   273 F.3d 76 (2d Cir. 2001), *abrogated on other grounds by Nat'l R.R.*
   *Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ...............................................................11

*Whaley v. City Univ. of N.Y.*,
   555 F.Supp.2d 381 (S.D.N.Y. 2008)....................................................................................26

*Williams v. City of New York*,
   No. 11 Civ. 9679 (CM), 2012 WL 3245448 (S.D.N.Y. Aug. 8, 2012) ..................................18

*Yusuf v. Vassar Coll.*,
   35 F.3d 709 (2d Cir. 1994)..................................................................................................24

*Zabar v. N.Y.C. Dep't of Educ.*,
   *18-cv-6657(PGG)*, 2020 WL 2423450 (S.D.N.Y. May 12, 2020) 1994)..............................30

**STATE STATUTES**

N.Y. Exec. Law § 290 *et seq* .......................................................................................... passim

**FEDERAL STATUTES**

42 U.S.C.
   § 1981................................................................................................................... passim
   § 1983................................................................................................................... passim

§ 2000-d *et seq.* ................................................................................................. passim
§ 2000d-3 .........................................................................................................21, 22, 23
§ 2000e *et seq.* .................................................................................................... passim

**RULES**

Fed. R. of Civ. Proc.
    Rule 12(b)(1) .....................................................................................................1
    Rule 12(b)(6) .............................................................................................. passim

**LOCAL AUTHORITIES**

N.Y.C. Admin. Code § 8-101 *et seq.* ...............................................................1

Defendants The City University of New York ("CUNY"), Dani McBeth, Nancy Sohler, and Erica Friedman (collectively, the "Individual Defendants" and together with CUNY, the "Defendants") respectfully submit this memorandum of law in support of their motion, brought pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), to dismiss Plaintiff's Amended Complaint, filed on April 11, 2022 (Dkt. #31, "Am. Compl."), in its entirety, for failure to state a claim, with the accompanying Declaration of Jaclyn Saffir ("Saffir Decl."), dated May 6, 2022, and the exhibits attached thereto.

## PRELIMINARY STATEMENT

Plaintiff Faith Miller-Sethi, who self-identifies as an African-American woman, was a Clinical Professor/Course Director at the CUNY School of Medicine from January 2019 to August 2020. Am. Compl. ¶¶ 2, 26, 45. During that time, a number of issues arose with Plaintiff's work performance, including student complaints of mistreatment and a lack of appropriate feedback and supervision, as well as inappropriate sharing of student performance and confidential health information with other faculty and staff. *Id.* ¶¶ 40, 81, 86, 107, 151. As a result, Plaintiff was not reappointed after the term of her appointment expired in August 2020. *Id.* ¶ 2. Although the Amended Complaint offers no evidence of discrimination, Plaintiff now claims that she was not reappointed due to her race. Specifically, she brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000-d *et seq.*, ("Title VI"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq.* ("NYCHRL"), alleging that she was unlawfully discriminated against and subjected to a hostile work environment on the basis of

1

race, and unlawfully retaliated against for complaining of race discrimination.

Defendants' motion to dismiss should be granted in its entirety because all of Plaintiff's claims fail as a matter of law. Plaintiff's Title VII claims against CUNY must be dismissed because she fails to allege any direct evidence of race-based discrimination or provide anything more than conclusory allegations of differential treatment compared to similarly situated employees, as required for her discrimination and hostile work environment claims (Points I, III); and she fails to plead facts tending to show there exists a causal connection between protected activity and any adverse action, as required for her retaliation claim (Point II). Her claims against the Individual Defendants must be dismissed for the same reasons, and because § 1981 does not provide a separate private right of action against state actors; the Individual Defendants are not subject to liability under the NYSHRL; Plaintiff has failed to show the Individual Defendants had the requisite personal involvement for liability; and her NYCHRL claims are barred by New York's sovereign immunity (Point V). Plaintiff's Title VI claims must be dismissed because she fails to satisfy the threshold requirement of a Title VI employment claim (Point IV). Accordingly, and for the reasons set forth below, the Amended Complaint should be dismissed in its entirety.

## STATEMENT OF ALLEGED FACTS[1]

Plaintiff Faith Miller-Sethi self-identifies as a Black woman of African-American descent. Am. Compl. ¶ 2. On or about January 9, 2019, Plaintiff was appointed Clinical Professor/Course Director for Evaluation in Healthcare Settings ("EHS") in the Community Health and Social Medicine ("CHASM") Department at the CUNY School of Medicine (the "Medical School"). *Id.*

---

[1] This statement is based on the allegations in the Amended Complaint, which are accepted as true for purposes of this motion only, except where otherwise noted herein, as well as other documents that the Court may properly consider on this motion to dismiss. *See*, *e.g.*, *Rhee-Karm v. Burnett*, No. 13 Civ. 6132 (JPO), 2014 WL 449126, at *3 (S.D.N.Y. Sept. 12, 2014) (noting that, in ruling on a Rule 12(b)(6) motion, a court may consider "the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken").

¶ 24. CHASM is a three-year course of study which includes field placements in community-based health centers and health-related programs in underserved areas of New York City ("Community Sites"), and EHS is a required course in the CHASM Department. *Id.* ¶ 23.

Plaintiff's initial appointment was for the period from January 9, 2019, through August 26, 2019, with the prospect of renewals for up to a total of seven years, without the possibility of tenure. *Id.* ¶ 26. Her responsibilities as Clinical Professor and Course Director for EHS included managing relationships with Community Sites, supervising student Community Site placements, communicating with Community Site supervisors, and teaching the EHS course. *Id.* ¶¶ 25, 56. In March 2019, Plaintiff was reappointed to the same title for the period of August 27, 2019 to August 25, 2020. *Id.* ¶ 45. Plaintiff's allegations of discriminatory treatment begin after June 2019, when Dr. Sohler became the Interim Chair of the CHASM Department. *Id.* ¶ 22. According to the Amended Complaint, Plaintiff and Dr. Sohler met four times, as described *infra*. *Id.* ¶ 46.

During the summer of 2019, Plaintiff alleges that issues arose with the Community Site placement of "AP," an EHS student. *Id.* ¶¶ 56-59. On June 4, 2019, Plaintiff was contacted by AP's Community Site supervisor and informed that AP would no longer be allowed to work at her Community Site. *Id.* ¶ 56. Plaintiff previously offered AP a placement in the Bronx, which AP "refused" because "she was not comfortable working in that area[,]" *id.* ¶ 58, and an alternative placement on Staten Island that Plaintiff "described … as [a] similar [area] to Long Island, where AP was from[,]" which AP rejected as well. *Id.* ¶ 59. AP also sought to create a placement for herself on Long Island without Plaintiff's authorization. *Id.* Plaintiff alleges that AP was "disruptive" at her failed placement and "refused the alternative" because "she was openly hostile to the racial makeup of the communities targeted by the EHS program." *Id.* ¶ 58.

Now lacking a Community Site placement for the EHS course, AP complained to Dr.

McBeth, the Associate Dean of Student Affairs, who called Plaintiff, Dr. Sohler, and AP to his office. *Id.* ¶ 60. At this meeting, Plaintiff alleges that Dr. McBeth "chided Plaintiff, 'you don't know Long Island,' assuming, without basis, in his microaggression that Plaintiff was unfamiliar with the community environment and standard of living of a Long Island suburb, where AP was from, or why AP might wish to decline working in the potential placements offered and tried (improperly) to create a placement in Long Island." *Id.* ¶ 61. Plaintiff alleges that this comment was "motivated by racial animus and biased assumptions about Plaintiff's community experiences because of her race, and improperly gave deference to the discriminatory position of AP." *Id.* As they left the meeting, Plaintiff told Dr. Sohler that she felt Dr. McBeth's comment was "improper, abusive, and racially motivated"; Dr. Sohler told Plaintiff she would report the incident to human resources, which later followed up with Plaintiff. *Id.* ¶ 63. Plaintiff alleges that in June 2019, Dr. Sohler "confided in Plaintiff … that she believed that AP's behavior toward Plaintiff was motivated by racism[,]" but Defendants "went on to enable AP's racially motivated, abusive and manipulative behavior and punished Plaintiff for holding AP accountable…." *Id.* ¶ 66.

Plaintiff alleges she was relieved that Dr. Sohler told her that she "would not have to deal with AP further[,]" because she "was afraid of AP, her ability to manipulate the truth and the out-sized influence AP's discriminatory animus had, made Plaintiff fear for her safety." *Id.* ¶¶ 67, 69. But one morning in July 2019, AP mistakenly arrived at a course meeting. *Id.* ¶ 70. Plaintiff "took great pains to let AP know that the course was only for students presently working at Community Sites." *Id.* Plaintiff alleges that AP was "embarrassed by her own error" and went to Dr. McBeth's office in tears to report that Plaintiff had "publicly embarrassed" her. *Id.* Dr. McBeth allegedly responded to these events by writing Plaintiff a "scathing email," stating "'you have to stop doing this[.]'" *Id.* ¶ 71. Plaintiff responded "by reporting [Dr.] McBeth's inappropriate and racially

biased conduct" to the human resources department, Chief Diversity Officer Diana Cuozzo, and others. *Id.* ¶ 72. According to Plaintiff, while Dr. McBeth denied any wrongdoing in his treatment of Plaintiff, the human resources department asked him to apologize to Plaintiff and, "[a]bout a month later, [he] went to Plaintiff's office and offered a non-apology[.]" *Id.* ¶ 73.

Following the incident with AP, seven EHS students filed student mistreatment reports against Plaintiff. *Id.* ¶ 88. According to the Amended Complaint, these mistreatment reports were discussed at the first two meetings between Plaintiff and Dr. Sohler. *Id*. ¶¶ 40, 87.

At the first meeting, in August 2019, Plaintiff alleges she was told by Dr. Sohler that these student mistreatment reports could impact whether she was reappointed. *Id.* ¶ 40. Since Plaintiff's first appointment ended August 26, 2019, and she "had never received any written communication about any continuing appointment[,]" Plaintiff "panicked" about whether her employment would continue immediately thereafter. *Id.* Days before her first appointment period ended, Plaintiff was told by the human resources department "that she had been re-appointed and should have received notification months earlier." *Id.* ¶ 41. Plaintiff notes that Dr. Sohler was on the Executive Faculty Committee ("EFC"), which makes reappointment determinations, and thus would have been aware that Plaintiff had already been reappointed for the following year. *Id.* ¶ 42. Plaintiff concludes that her panic about her immediate reappointment occurred because Dr. Sohler "deliberately wanted to cause Plaintiff distress," and that "no other faculty member outside of Plaintiff's protected class [] was subjected to this sort of harassment and wonton distress[.]" *Id.* ¶¶ 43-44.

At the second meeting, on or about September 6, 2019, Plaintiff alleges Dr. Sohler was categorically dismissive of student mistreatment reports in general and noted the lack of validity of these specific reports against Plaintiff. *Id.* ¶ 87.

During their third meeting, in November 2019, Dr. Sohler informed Plaintiff that AP had

met the EHS requirement despite not completing the course under Plaintiff's supervision. *Id.* ¶ 74. Plaintiff alleges that this made her feel "betrayed, disrespected and demeaned" and alleges that her white predecessors and faculty outside of her protected class were not "subject to such undermining treatment." *Id.* ¶¶ 78, 80.

Plaintiff and Dr. Sohler's last meeting was on January 9, 2020. *Id.* ¶ 46. Dr. Sohler sent a purported summary of the meeting to Plaintiff by letter dated January 13th, 2020 (the "January 13th Letter", attached as Saffir Decl., Ex. A). *Id*. ¶ 48. The January 13th Letter requested that Plaintiff identify problem-based learning sessions she would facilitate (*id.* ¶¶ 93-95); provide Dr. Sohler with dates to observe Plaintiff's teaching, as required annually by the Medical School (*id.* ¶ 133); provide a revised syllabus for the EHS course the following week (*id.* ¶ 123); provide information relevant to establishing a course budget (*id.* ¶¶ 115-118); and provide a report outlining the status of Community Sites (*id.* ¶ 111). The January 13th Letter also described several issues with Plaintiff's performance, including the student mistreatment reports against her (*id.* ¶ 86), Plaintiff improperly inviting another faculty member to witness meetings during which she told students they were terminated from their Community Site placements (*id.* ¶¶ 81-85), and a failure to enforce the Medical School's attendance policy and a breach of student confidentiality (*id.* ¶ 107).

Plaintiff alleges that the January 13th Letter made false accusations about her conduct during her tenure, that she was targeted based on her complaints of racial hostility in the workplace, and that similar accusations and complaints were not leveled against faculty members outside of Plaintiff's protected class. *Id.* ¶ 48. For example, Plaintiff alleges the January 13th Letter "deliberately and manipulatively" presented the student mistreatment reports as if they were actually reflective of Plaintiff's performance (*id.* ¶ 90), raised the improper sharing of student health information as a pretextual reason for further harassing Plaintiff (*id.* ¶ 108), and made the

6

"ridiculous demand" that Plaintiff provide a record of her time and travel from the whole prior year for budgeting purposes (*id.* ¶ 116). Plaintiff also complains that the January 13th Letter requested information, such as teaching observation dates or Community Site data, that were otherwise knowable (*id.* ¶ 133) or accessible to Dr. Sohler via the CHASM department's shared directory (*id.* ¶ 112). Plaintiff alleges she was subjected to discrimination because other faculty who are not members of her protected class were not subject to the demands of the January 13th Letter. *Id.* ¶¶ 38, 48, 84, 91, 95, 109, 114, 118, and 132.

According to Plaintiff, given "the voluminous, disingenuous and inaccurate statements by [Dr.] Sohler in the January 13th Letter," she immediately complained to Dr. Friedman—at that time the Interim Dean of the Medical School—and to the Assistant Dean of Diversity, Equity and Inclusion, "both of whom had already been long [] aware that Plaintiff was being subjected to harassing and disparate treatment by [Dr.] Sohler and [Dr.] McBeth[,]" *id.* ¶ 138, including Dr. McBeth's "cover-up for a student's racist campaign against Plaintiff[.]" *Id.* ¶ 85. Dr. Friedman met with Plaintiff in December 2019, at which time Plaintiff alleges Dr. Friedman "merely advised Plaintiff to 'just overlook Dani[] [McBeth's] Irish temper,'" and "refused to discuss anything further." *Id.* ¶ 139. Plaintiff alleges that, in or about December 2019, she met with the Assistant Dean of Diversity, Equity and Inclusion and Chief Diversity Officer to report "these most recent concerns" but did not take additional steps because she feared further reprisal. *Id.* ¶¶ 141-42.

On March 3, 2020, Plaintiff was emailed an allegedly poor Annual Review written by Dr. Sohler (the "Annual Review"), which purportedly "made disingenuous accusations" and echoed the January 13th Letter in reciting "knowingly false allegations about Plaintiff's performance[.]" *Id.* ¶ 145. Plaintiff alleges the Annual Review newly criticized her for not publishing papers or procuring grants, which "held Plaintiff to a different standard based on her race, as other clinical

faculty, who are not members of Plaintiff's protected class, were not asked to write grants or publish papers[.]" *Id.* ¶ 153. Plaintiff further alleges that the Annual Review understated or "obfuscate[d]" her accomplishments "to support Plaintiff's eventual pretextual termination." *Id.* ¶¶ 154-55. According to Plaintiff, "the Annual Review was a pretextual exercise, calculated to mask the disparate treatment that Plaintiff received because of her race and in retaliation for her numerous complaints about the hostile work environment in which she had labored." *Id.* ¶ 159.

On or about March 12, 2020, Plaintiff was notified she had been denied reappointment, terminating her employment effective on or about August 26, 2020. *Id.* ¶ 160. Plaintiff alleges that the "stress of the racially hostile work environment … caused her to require a medical leave of absence," *id.* ¶ 162, and that the Medical School continued to employ faculty who are not members of Plaintiff's protected class but who, on information and belief, received lower course evaluations than Plaintiff, received student complaints, submitted grades late, and did not publish papers or engage in other activities, the absence of which was used to justify penalizing Plaintiff. *Id.* ¶ 163. Via email on March 19, 2020, Plaintiff alleges that she was "demoted and assigned administrative tasks to further demean and humiliate her in her terminal six months." *Id.* ¶ 165.

Following the conclusion of her appointment, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and requested and received a Notice of Right to Sue. Dkt. No. 1-1. She filed her complaint in this case on October 19, 2021, alleging employment discrimination, retaliation, and hostile work environment under Title VII and Title VI against CUNY, and under Section 1981, Section 1983, the NYSHRL, and the NYCHRL against the Individual Defendants. On April 8, 2022, Plaintiff filed the Amended Complaint alleging the same claims. Dkt. Nos. 30-32. Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

**STANDARD OF REVIEW**

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  The "plausibility standard" is guided by "two working principles."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft*, 556 U.S. 662). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*.

For the reasons described below, Plaintiff fails to satisfy this standard with respect to any of her claims. The Amended Complaint should therefore be dismissed in its entirety.

**ARGUMENT**

## I.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR EMPLOYMENT DISCRIMINATION AGAINST CUNY UNDER TITLE VII.

Plaintiff brings a race discrimination claim against CUNY under Title VII. "'It is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic.'"  *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Accordingly, at the pleading stage, "a plaintiff must plausibly allege that (1) the employer took adverse action against

[her] and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). More specifically, the plaintiff must "plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* at 86-87 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). A plaintiff can satisfy this burden "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87. Thus, "[o]n a motion to dismiss, the question is … whether the well-pleaded factual allegations *plausibly* give rise to an inference of unlawful discrimination, *i.e.*, whether plaintiffs allege enough to 'nudge[] their claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis in original).

As shown below, the Amended Complaint contains only one alleged adverse employment action – Plaintiff's non-reappointment – and Plaintiff fails to plausibly allege that it was motivated by discriminatory intent. Her Title VII discrimination claim should therefore be dismissed.

### a.   *The only adverse employment action against Plaintiff was her non-reappointment.*

To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter,* 548 F.3d 70, 78 (2d Cir. 2008) (emphasis omitted); *accord Patane,* 508 F.3d at 112. "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Mathirampuzha,* 548 F.3d at 78 (quoting *Sanders v. N.Y.C. Hum. Res. Admin.,* 361 F.3d 749, 755 (2d Cir. 2004)).

Although the Amended Complaint contains a litany of workplace grievances, the only alleged action affecting the terms and conditions of Plaintiff's employment was her non-reappointment. For example, because Plaintiff does not allege that the January 13th Letter affected the terms and conditions of her employment, it did not constitute an adverse employment action. *Cf. Weeks v. New York Div. of Parole*, 273 F.3d 76, 86 (2d Cir. 2001) (holding that a "notice of discipline" and a "counseling memo" by themselves were insufficient, as a matter of law, to constitute adverse employment action), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108–14 (2002).

With respect to Plaintiff's allegation that she was "demoted" on March 19, 2020 (Am. Compl., ¶ 165), she fails to allege that the change in her job duties at that time included any change in her wage, salary or benefits. Although in certain circumstances the receipt of undesirable assignments may rise to the level of an adverse employment action*, see, e.g., Feingold v. New York*, 366 F.3d 138 152-53 (2d Cir. 2004) (plaintiff's receipt of "disproportionately heavy workload" constitutes a materially adverse employment action), it "must be accompanied by a material detriment to an employee's working conditions to constitute an adverse employment action," *Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014). Plaintiff's unwanted change in job duties, "without more, amounts to nothing more than a 'mere inconvenience,' not a 'materially adverse change in the terms and conditions of employment[.]'" *Id.* citing *Sanders*, 361 F.3d at 755.[2]

---

[2] Even if the purported demotion was an adverse employment action, Plaintiff fails to allege it was motivated by discriminatory intent. As described in the letter incorporated by reference in Paragraph 165 of the Amended Complaint, Plaintiff's job responsibilities changed on March 19, 2020 because, "[i]n light of the emergency situation in New York City" caused by the COVID-19 pandemic, the Medical School planned to no longer include student placements with the EHS course. *See* Saffir Decl., Ex. B. Plaintiff acknowledges that "some of the changes made to [her] EHS course were precipitated by the Covid Pandemic" (Am. Compl., ¶ 161), but complains that Defendants could have "continue[d] her EHS course within Covid-necessitated modifications[.]" (*Id.* ¶ 165). But Plaintiff's speculation that Defendants could have undertaken different safety precautions during the COVID-19 pandemic is patently insufficient to show that those taken were a product of discrimination.

> ### b. *Plaintiff has not alleged a plausible inference of discrimination in connection with her non-reappointment.*

To survive a motion to dismiss a Title VII discrimination claim, a plaintiff must "plausibly allege that" her Title VII protected characteristic "was a motivating factor" in her employer's decision to take an adverse action against her. *Vega*, 801 F.3d at 86. She can satisfy this requirement "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87. An inference of discrimination can be drawn from circumstances including "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," or "preferential treatment given to employees outside the protected class[.]" *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). Although "there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision," *id.*, employees must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent[.]" *Vega*, 801 F.3d at 85.

The Amended Complaint does not allege that Plaintiff's supervisors or other management at CUNY made any comments concerning her race whatsoever, let alone any statements indicating that those characteristics played a role in their decisions to not reappoint her. While "the law permits a plaintiff to raise a plausible inference of discrimination by alleging 'preferential treatment given to similarly situated individuals[,]'" this method "is allowed only if the alleged comparators are 'similarly situated in all material respects.'" *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 407 (S.D.N.Y. 2012) (quoting *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir.1997)). "Absent allegations plausibly suggesting that the … colleagues who purportedly received superior treatment were similarly situated to [plaintiff] in all relevant respects ... [plaintiff]'s conclusory assertions of differential treatment do not permit a plausible

inference of … discrimination." *Id.*

Here, Plaintiff repeatedly makes conclusory allegations that she was "supervised and treated differently than other employees with similar job duties and responsibilities" (Am. Compl. ¶ 3; *see also id.* ¶¶ 38-39, 44, 48, 80, 95, 98, 109, 114, 118, 132, 148, 153, 163), but conclusory allegations of differential treatment are insufficient. A plaintiff relying on disparate treatment evidence "must show [she] was similarly situated in all material respects to the individuals with whom [she] seeks to compare [herself]." *Johnson v. City of New York*, No. 17 Civ. 7585 (PKC), 2019 WL 4468442, at *9 (E.D.N.Y. Sept. 18, 2019) (Chen, J.) (granting Rule 12(b)(6) dismissal of Title VII discrimination claim, citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)).

> Employees are not "similarly situated" merely because their conduct might be analogized. … [T]o be similarly situated, other employees must have reported to the same supervisor as the plaintiff, … been subject to the same standards governing performance evaluation and discipline, and … engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.

*Mazzella v. RCA Glob. Commc'ns, Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986), *aff'd*, 814 F.2d 653 (2d Cir. 1987).

The Amended Complaint identifies only one other faculty member by name,[3] and Plaintiff

---

[3] On the only occasion where Plaintiff identifies another employee, she alleges that she was "falsely accused of improperly disclosing student grades" when she scheduled meetings to inform students they were dismissed from their Community Sites and asked Dr. Erica Lubetkin to witness these discussions. Am. Compl. ¶¶ 81-84. Plaintiff asserts that "Dr. Lubetkin, who is not a member of Plaintiff's protected class … received no similar criticism for her own participation[.]" *Id.* ¶ 84. Despite Plaintiff's assertion that she and Dr. Lubetkin were similarly situated "with regard to standards of student discipline and privacy[,]" *id.* ¶ 84, Plaintiff describes Dr. Lubetkin as "a tenured clinician and 21-year veteran of the CHASM department[,]" *id.* ¶ 81, and a "witness" to this meeting. *Id.* ¶ 82. "'In the context of employee discipline, the plaintiff and the similarly situated employee must have engaged in comparable conduct, that is, conduct of comparable seriousness.'" *Dooley v. JetBlue Airways Corp.*, 636 Fed. Appx. 16, 20 (2d Cir. 2015) (summary order) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014)). Because the Amended Complaint describes Dr. Lubetkin as a "witness" to meetings that Plaintiff organized and led as the students' professor, Am. Compl. ¶¶ 81-84, the two did not engage in comparable conduct and Plaintiff cannot support a minimal inference of discrimination based on any alleged differential treatment of Dr. Lubetkin.

otherwise compares herself to faculty members generally, asking the Court to assume that all the Medical School's faculty members—regardless of tenure, seniority, title, or responsibilities—are interchangeable. Such allegations are insufficient. *See Anderson*, 850 F. Supp. 2d at 407 ("Plaintiff in effect asks us to assume that all members of the clerical staff in the Managing Attorney's Office are interchangeable. That is not an assumption we are prepared to accept."). "The plaintiff must compare herself to employees who are 'similarly situated in all material respects.'" *Norville v. Staten Island Univ. Hosp.,* 196 F.3d 89, 95 (2d Cir.1999) (quoting *Shumway,* 118 F.3d at 64); *see also Mandell,* 316 F.3d at 379; *Graham v. Long Island R.R.,* 230 F.3d 34, 39 (2d Cir.2000). "'[S]imilarly situated in all material respects does not mean all respects generally, but rather sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *Henry*, 18 F. Supp. 3d at 408, citing *Hernandez v. City of New York,* No. 11 Civ. 3521(SJ)(RER), 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) (quoting *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir.2001)); *accord Deras v. MTA,* No. 11 Civ. 5912(RRM)(CLP), 2013 WL 1193000, at *10 (E.D.N.Y. Mar. 22, 2013).

Plaintiff describes at length that she was not a faculty member with generic teaching responsibilities. Specifically, in addition to teaching the EHS course, her responsibilities included building and maintaining relationships with Community Sites, supervising student placements at the Community Sites, and "spen[ding] most of every day out in the field[.]" Am. Compl. ¶¶ 25, 30, 126, 154. Although Plaintiff makes the conclusory claim that she was treated and supervised differently from other similarly situated faculty, the Amended Complaint lacks any factual basis from which one could reasonably infer that any employee similarly situated to Plaintiff, but not of a protected class, was subject to differential treatment. The Amended Complaint fails to describe "who these people are, what their responsibilities were, how their workplace conduct compared to

14

[Plaintiff's], or how they were treated." *Henry*, 18 F. Supp. 3d at 408. "Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian persons is simply not sufficient to 'nudge [ ] [her] claims across the line from conceivable to plausible,' *Twombly,* 550 U.S. at 570, and thus is insufficient to support her racial discrimination claim." *Henry*, 18 F. Supp. 3d at 408, citing *Bhanusali v. Orange Reg'l Med. Ctr.,* No. 10 Civ. 6694(CS), 2013 WL 4828657, at *5 (S.D.N.Y. Aug. 12, 2013) (dismissing disparate treatment claim on the ground that "Plaintiffs' general allegations that misconduct by 'younger and/or white physicians' went without peer review or discipline ... are wholly conclusory, do not specify the individuals involved or the nature of their alleged misconduct, and are thus insufficient to render plausible the inference of discriminatory intent").

Having failed to allege any facts directly showing discrimination, or facts indirectly showing her non-reappointment occurred under circumstances giving rise to a plausible inference of discrimination, Plaintiff's discrimination claims under Title VII in Count 1 must be dismissed.

## II.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM AGAINST CUNY FOR RETALIATION UNDER TITLE VII.

For a Title VII retaliation claim to survive a motion to dismiss, "the Plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) because [she] has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. An adverse employment action in a Title VII retaliation claim is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). For a complaint to qualify as protected activity, the plaintiff must "have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001).  To allege causation, a plaintiff "must establish that his or her protected activity was a but-

for cause of the alleged adverse action by the employer," *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), and the failure to allege "but-for" causation requires dismissal. *Saliba v. Five Towns Coll.*, 991 F. Supp. 2d 449, 452 (E.D.N.Y. 2014).

As show below, the Amended Complaint contains only one alleged adverse employment action – Plaintiff's non-reappointment – and Plaintiff fails to plausibly allege that such action was the product of retaliation. Her Title VII retaliation claim should therefore be dismissed.

### a. *The only materially adverse employment action taken against Plaintiff is her non-reappointment.*

Plaintiff alleges CUNY retaliated against her by refusing to reappoint her, demoting her, and subjecting her to an antagonistic and inhospitable working environment. Am. Compl. ¶ 187. For purposes of her retaliation claim, only her non-reappointment is a materially adverse employment action. "The requirement of a materially adverse employment action reflects the principle that 'Title VII does not protect an employee from all retaliation, but only retaliation that produces an injury or harm.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014), *quoting Tepperwien v. Entergy Nuclear Operations, Inc.,* 663 F.3d 556, 569 (2d Cir. 2011). Although Plaintiff complains about the January 13th Letter and the purported "demotion" that did not affect her salary, title or benefits, neither produced the requisite injury or harm to be materially adverse employment actions.

Nor does Plaintiff's dissatisfaction with her working environment constitute a materially adverse employment action. As noted above, a materially adverse action is an action that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a [charge] of discrimination." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). The Amended Complaint alleges that, shortly after her last complaint to the Chief Diversity Officer in December 2019, Plaintiff "feared … reprisal" such that she did not further pursue her complaints. Am.

Compl., ¶¶ 141-42. But Plaintiff's work environment prior to the December 2019 complaint is not a materially adverse employment action because it would not dissuade a reasonable employee from protected activity and, indeed, did not dissuade Plaintiff from complaining. *Id. See Tepperwien*, 663 F.3d at 572 ("[W]hile the test is an objective one, it is relevant that [plaintiff] himself was not deterred from complaining …."); *Levitant v. N.Y.C. Hum. Res. Admin.*, 558 F. App'x 26, 29 n.2 (2d Cir. 2014); *Hahn v. Bank of Am. Inc.*, No. 12 Civ. 4151(DF), 2014 WL 1285421, *24 (S.D.N.Y. Mar. 31, 2014), *aff'd*, 607 F. App'x 55 (2d Cir. 2015). And Plaintiff makes no allegations describing any antagonistic or hostile working environment after her December 2019 complaint. Accordingly, only Plaintiff's non-reappointment can satisfy the first element of a retaliation claim. For the reasons set forth below, Plaintiff fails to adequately allege that her non-reappointment was retaliatory.[4]

### b. *Plaintiff has failed to sufficiently allege that her non-reappointment was the product of retaliation.*

Plaintiff does not make any factual allegations of retaliatory animus directly causing her non-reappointment, so she can only demonstrate causation indirectly "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Hicks*, 593 F.3d at 170. While a protected activity generally involves the filing of a formal complaint of discrimination with an administrative agency, *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992), the Second Circuit has recognized that "protected activity" includes "informal protests of discriminatory employment practices, including making complaints to management." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

---

[4] To the extent any other conduct is found to be an adverse employment action for purposes of Plaintiff's retaliation claim, she fails to adequately allege any retaliatory animus for the same reasons set forth in section II(b) below.

"However, such informal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012).

Plaintiff alleges she engaged in protected activity pursuant to Title VII when she "complained to CUNY's HR staff[] of the discrimination based on her race[.]" Am. Compl. ¶ 185. As alleged in the Amended Complaint, Plaintiff only complained to "human resources" once in or about July 2019 (*id.* ¶ 72), approximately eight months before her non-reappointment in March 2020. "The Second Circuit often utilizes a two month window to determine whether the temporal connection between the protected activity and alleged retaliation is sufficiently close or too attenuated." *Fields v. N.Y.C. Health & Hosp. Corp.*, No. 17 Civ. 6042 (PKC), 2018 WL 3518506, at *5 (E.D.N.Y. July 20, 2018) (Chen, J.) (granting Rule 12(b)(6) dismissal of *pro se* plaintiff's retaliation claim); *see also Lopez v. City of New York*, No. 14 Civ. 3285 (NGG), 2016 WL 3129184, at *9 (E.D.N.Y. June 2, 2016) (stating that "courts in this circuit have consistently held that a time period of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation"); *Williams v. City of New York*, No. 11 Civ. 9679 (CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged."); *Mazurkiewicz v. N.Y.C. Health & Hosp. Corp.*, No. 09 Civ. 5962 (WHP), 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) (explaining that "[t]he Second Circuit often utilizes a two month window to determine whether the temporal connection between the protected activity and alleged retaliation is sufficiently close or too attenuated"). Accordingly, the Amended Complaint has failed to allege any causal link between her complaint to Human Resources and her non-reappointment, even by temporal proximity.

18

Although the Amended Complaint alleges that Plaintiff complained on two other occasions (Am. Compl., ¶¶ 138, 141), neither of these complaints are protected activity with a causal connection to her non-reappointment. First, Plaintiff alleges she complained to the Assistant Dean of Diversity, Equity and Inclusion and the Chief Diversity Officer about "recent concerns" in or about December 2019. *Id.* ¶ 141.  However, Plaintiff fails to allege that the "recent concerns" included complaints of discrimination, which is necessary for the complaint to constitute protected activity. But even if she did complain of discrimination, this meeting occurred approximately four months before her non-reappointment, and thus does not allow for an inference of causation for the reasons described *supra*.

Second, Plaintiff alleges that after receiving the January 13th Letter, she "responded to it by immediately making a complaint to Defendant Friedman and the Assistant Dean of Diversity, Equity and Inclusion," about its "voluminous, disingenuous and inaccurate statements[.]" *Id.* ¶ 138. But general complaints about a supervisor's treatment are not protected activity. *See Risco v. McHugh*, 868 F.Supp.2d 75, 110 (S.D.N.Y. 2012) ("But generalized complaints about a supervisor's treatment are insufficient"); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir.2011) (affirming district court's holding that plaintiff failed to state a prima facie case of retaliation because generalized complaint was not protected activity); *Thomas v. iStar Fin.*, 438 F.Supp.2d 348, 365 (S.D.N.Y. 2006) ("[C]omplaints centered on general allegations of harassment unrelated to race [ ] are not protected activity under Title VII", aff'd, 629 F.3d 276 (2d Cir. 2010); *see also Ruhling v. Tribune Co.*, No. CV 04–2430(ARL), 2007 WL 28283, at *21 (E.D.N.Y. Jan. 3, 2007) (holding that an internal complaint of favoritism was not protected activity where plaintiff had not framed complaint as involving discriminatory conduct).

Finally, Plaintiff fails to allege that she would have been reappointed "but-for" retaliation.

To the contrary, as described in the Amended Complaint, the EFC notified Plaintiff that she was not reappointed ten days after Plaintiff received a "poor Annual Review" describing numerous issues with her work previously identified in the January 13th Letter. Am. Compl. ¶ 145-60. Under these circumstances, as a matter of law, Plaintiff has failed to plead that "but-for" retaliation, she would have been reappointed. *Saliba*, 991 F. Supp. 2d at 452 (granting Rule 12(b)(6) dismissal for failure to allege plaintiff's protective activity was the but-for cause of her termination). Plaintiff's Title VII retaliation claim in Count 3 must therefore be dismissed.

### III.   PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM AGAINST CUNY FOR HOSTILE WORK ENVIRONMENT UNDER TITLE VII.

Plaintiff has not alleged plausible facts to support her claim of a hostile work environment. To establish a hostile work environment under Title VII, a plaintiff must identify conduct that "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." *Patane*, 508 F.3d at 113 (citation and quotations omitted). The conduct complained of must be objectively severe or pervasive enough that a reasonable person would find it hostile and abusive, and the plaintiff must subjectively perceive the work environment as abusive. *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

The allegations in the Amended Complaint do not include anything even resembling intimidation, ridicule, or insult, and, thus, the predicate conduct required for a hostile work environment claim is missing. "[A]s a matter of law, micromanagement is not sufficiently severe or pervasive to constitute a hostile work environment." *Edwards v. Elmhurst Hosp. Ctr.*, 08 CV 3686 (RRM)(LB), 2010 WL 11623370, at *11 (E.D.N.Y. Sept. 21, 2010).  Allegations that a

supervisor is "micromanaging, bullying, degrading, [and] dehumanizing" are insufficient because "the hostile work environment prohibited by Title VII, Section 1983 and the NYSRL is not any environment that a subordinate finds unpleasant." *Milord-Francois v. New York State Off. of Medicaid Inspector Gen.*, 19 CV 00179 (LJL), 2020 WL 5659438, at *20 (S.D.N.Y. Sept. 23, 2020); *Meder v. City of New York*, 05 CV 919 (JG), 2007 WL 1231626, at *5 (E.D.N.Y. Apr. 27, 2007) (finding no severe and pervasive environment where "most of the alleged conduct reflects overinvolvement and micromanaging by [plaintiff's] supervisors on work-related matters" because a hostile work environment is "more than having a difficult or aggressive boss. It is a pervasively toxic environment, necessarily affecting the terms and conditions under which one is employed."). Plaintiff's Title VII hostile work environment claim must therefore be dismissed.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM OF DISCRIMINATION OR RETALIATION AGAINST CUNY UNDER TITLE VI.

### a.   *Plaintiff fails to satisfy the threshold requirement of a Title VI employment claim.*

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 42 U.S.C. § 2000d.  However, with respect to claims involving "any employment practice of any employer," Title VI does not apply "except where a primary objective of the federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3; *see also Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) ("[T]he language of section 2000d–3 was added to the bill to make it clear that discrimination in employment which does not affect *intended beneficiaries of federal assistance* is not within the reach of title VI.") (emphasis in original) (citations omitted).

Accordingly, "'for a claimant to recover under Title VI against an employer for

discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds *aimed primarily at providing employment*.'"  *Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704, 709 (S.D.N.Y. 2013) (emphasis in original) (quoting *Assoc. Against Discrimination in Emp., Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981)).  In other words, to satisfy Section 2000d-3, "Plaintiff must allege a logical nexus between the federally funded program and the employment discrimination suffered."  *Id.* at 709; *see also Commodari v. Long Island Univ.*, 89 F. Supp. 2d 353, 378-79 (E.D.N.Y. 2000) (plaintiff's allegations were "insufficient to give him standing to sue under Title VI" because they failed to establish "any logical nexus between his termination and a federal funded LIU program or activity").

Thus, in order to survive a motion to dismiss, Plaintiff must "plausibly allege not only that the defendant was an entity receiving federal funding…but also that the federal funds were made available primarily for providing employment" and must also "sufficiently set forth a logical nexus between the federally funded program and the employment discrimination suffered that is supported by evidence proffered in the complaint." *Moore v. City of New York*, 2017 WL 35450, at *14 (S.D.N.Y. Jan. 3, 2017) (citations omitted), adopted by, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017); *see also Johnson*, 411 F. Supp. 2d at 175-76 ("[C]ourts have dismissed [Title VI employment discrimination] complaints for failure to specify when funds were received, what they were used for, and whether their primary objective was to provide employment.").

The Amended Complaint entirely fails to satisfy these pleading standards.  Indeed, Plaintiff's sole allegations related to federal funding is that "CUNY received, and continues to receive, federal financial assistance."  *See* Am. Comp. ¶¶ 15, 193.  Although Plaintiff alleges the Medical School's "goals are informed by its unique social mission of improving health care in underserved communities" (*id.* ¶ 18), and that its allegedly discriminatory employment practices

affect the "delivery of services" (*id.* ¶¶ 15, 193), she does not provide any information about the federal funds received by CUNY, much less establish that those funds were in any way connected to her employment at CUNY.  Plaintiff's barebones allegation is patently insufficient to satisfy the requirements of Section 2000d–3.  *Moore*, 2017 WL 35450 at *15 (allegation that defendants "receive federal financial assistance and funds earmarked primarily for employment" failed to satisfy Section 2000d–3 because "it is unsupported by any factual allegations regarding such a funding program or additional evidence that would allow the Court plausibly to infer that the requisite logical nexus exists between the federally funded program and the claimed employment discrimination"); *Johnson*, 411 F. Supp. 2d at 176 (allegation that defendants "each receive federal financial assistance to conduct and maintain its programs" failed to satisfy Section 2000d–3 because "this allegation does not establish that the primary purpose of the federal funds was to provide employment or that Plaintiff was the intended beneficiary").

The Amended Complaint fails to satisfy the threshold requirement for bringing an employment discrimination claim under Title VI and should be dismissed.  *See, e.g., Moore*, 2017 WL 35450 at *9, 15 (dismissing Title VI employment discrimination and retaliation claims because, *inter alia*, plaintiff "has not sufficiently pled that 'a primary objective of the federal financial assistance is to provide employment'") (quoting Section 2000d-3); *Johnson*, 411 F. Supp. 2d at 174-77 (dismissing Title VI employment discrimination and retaliation claims because "the Complaint fails to satisfy [Section 2000d-3] and, therefore, Plaintiff fails to state a claim under Title VI"). Therefore, Plaintiff's Title VI claims in Counts 4, 5, and 6 must be dismissed.

Even if the Court were to find that Section 2000d–3 has been satisfied in this case (which it has not), dismissal of Plaintiff's Title VI claims would still be necessary because she fails to adequately allege the other elements of her claim.

### b. *Plaintiff fails to adequately allege the other elements of a Title VI claim.*

To state a discrimination claim under Title VI, Plaintiff must plausibly allege that she was discriminated against "(1) ... based on race, color, or national origin; (2) such discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for defendants' actions." *Kajoshaj v. N.Y.C. Dep't of Educ.,* 543 Fed. Appx. 11, 13 (2d Cir. 2013) (internal quotation marks omitted); *see also, e.g., McCrudden v. E\*Trade Fin. Corp.,* No. 13-CV-8837 (WHP), 2014 WL 3952903, at \*3 (S.D.N.Y. Aug. 12, 2014); *Biswas v. City of New York,* 973 F. Supp. 2d 504, 531 (S.D.N.Y. Sept. 30, 2013). Significantly, "[a] plaintiff alleging discrimination [under Title VI] 'must do more than recite conclusory assertions. In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'" *McCrudden,* 2014 WL 3952903, at \*3 (quoting *Yusuf v. Vassar Coll.,* 35 F.3d 709, 713 (2d Cir. 1994)). Conclusory statements of the elements of a discrimination claim or formulaic allegations that a plaintiff was treated differently or discriminated against by Defendants due to his race are insufficient to raise a plausible claim for relief under Title VI. *See Kajoshaj,* 543 Fed. Appx. at 14 (collecting cases). As discussed *supra* in the context of Plaintiff's Title VII claims, she fails to set out sufficient factual allegations to establish a necessary causal link between the incidents she recounts and a plausible inference of racial animus.

In order to state a retaliation claim under Title VI, a complaint must "plausibly allege: (1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and defendants' adverse action." *Diaz v. City Univ. of N.Y.*, 2016 WL 958684, at \*2 (S.D.N.Y. Mar. 8, 2016) (citations omitted). As discussed *supra* in the context of Plaintiff's Title VII claims, she fails to set out sufficient factual allegations to establish a necessary causal link between her

protected activity and her non-reappointment.

**V.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL DEFENDANTS UNDER FEDERAL OR STATE LAW.**

*a.   Plaintiff's § 1981, § 1983 and NYSHRL claims are defective for the same reasons as her Title VII claims.*

Plaintiff brings race discrimination, hostile work environment and retaliation claims against the Individual Defendants under § 1981 (Counts 7, 8 and 9); § 1983 (Counts 10, 11 and 12); and NYSHRL (Counts 13, 14 and 15). These are all analyzed under the same burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and must be dismissed for the same reasons as her Title VII claims. *Ruiz v. County of Rockland,* 609 F.3d 486, 491 (2d Cir. 2010) (§ 1981, § 1983, and Title VII); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 & n. 1 (2d Cir. 2000) (NYSHRL, NYCHRL, and Title VII); *Vega*, 801 F.3d at 88 (§ 1983 and Title VII); *Davis v. Oyster Bay–East,* No. 03–CV–1372, 2006 WL 657038, at *8 n.12 (E.D.N.Y. Mar. 9, 2006), *aff'd,* 220 Fed. Appx. 59 (2d Cir. 2007) (stating that "discrimination claims under Title VII, 42 U.S.C. §§ 1981 and 1983, and NYHRL § 296 are analyzed together, as the same analytic framework applies to each").

*b.   There is no § 1981 private right of action against the Individual Defendants.*

Plaintiff asserts claims of discrimination, hostile work environment, and retaliation against the Individual Defendants in their individual capacities pursuant to § 1981. (Counts 7-9.) But § 1981 "does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). "[T]he express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and law, provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735

(1989). "The Supreme Court's holding in *Jett* has been interpreted to encompass not only governmental entities, but also individuals sued in their individual capacities who are also state actors." *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019); *see, e.g., Whaley v. City Univ. of N.Y.*, 555 F.Supp.2d 381, 400-01 (S.D.N.Y. 2008). Accordingly, Plaintiff's § 1981 claims in Counts 7 through 9 must be dismissed.

### c. *Plaintiff fails to show Individual Defendants had requisite personal involvement for liability under § 1983.*

Even if they were not defective for the reasons already discussed, Plaintiff's claims against the Individual Defendants must be dismissed because Plaintiff fails to allege any non-conclusory facts showing that the Individual Defendants were personally involved in any materially adverse actions or that they acted with retaliatory or discriminatory motives. *See Raspardo*, 770 F.3d at 125 ("in disparate treatment cases brought pursuant to § 1983, liability . . . requires personal involvement by a defendant, who must act with discriminatory purpose."); *see also Gronowski v. Spencer*, 424 F.3d 285, 293 (2d Cir. 2005) ("[t]he required causal connection … only exists if the … defendants responsible for the action "directly participated" in the unlawful action, and "direct participation ... in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal"); *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 75-76 (S.D.N.Y. 2016) (dismissing retaliation claims because "[u]nder Section 1981, the NYSHRL, and the NYCHRL, individual liability exists only where a defendant 'actually participate[d] in the conduct giving rise to a discrimination claim.'"); *Edwards v. Jericho Union Free School Dist.*, 904 F. Supp. 2d 294, 308 (E.D.N.Y. 2012) (no finding of personal liability simply because defendant held a position of authority); *Gonzalez*, 377 F. Supp. 3d at 289 (dismissing § 1983 claims for failing to allege personal involvement); *Robles v. Goddard Riverside Cmty. Ctr.*, 08 CV 4856(LTS)(JCF), 2009 WL 1704627, at *3 (S.D.N.Y.

June 17, 2009) (same under SHRL).

According to the Amended Complaint, Plaintiff was terminated by the EFC. Am. Compl., ¶ 160. While Plaintiff alleges that the Individual Defendants were on the EFC, *id.*, she does not allege that they directly participated in the EFC's determination not to reappointment her. Accordingly, Counts 7, 9, 10, 12, 13, 15, 16 and 18 must be dismissed in their entirety.

### d.   The Individual Defendants are not subject to liability under the NYSHRL.

Under NYSHRL, "an employee can be held individually liable when he 'ha[s] any ownership interest' or 'any power to do more than carry out personnel decisions made by others.'" *Kraiem v. JonesTrading Instit. Servs. LLC*, 2021 WL 2134818, at *4 (S.D.N.Y. May 26, 2021) (quoting *Patrowich v. Chem. Bank*, 63 N.Y. 2d 541, 542 (N.Y. 1984)). Neither basis for liability exists against any Individual Defendant in this case. Clearly there is no "ownership" liability for any Individual Defendant because CUNY is a State university. *See De Figueroa v. N.Y.*, 2019 WL 4221181, *18 (S.D.N.Y. Sept. 5, 2019) ("though [the] Individual Defendants hold authority over Plaintiff in the workplace, they clearly lack an ownership interest in the University, as well as the power to hire and fire Plaintiff"). The second route to liability is usually interpreted narrowly "as covering only supervisors who, themselves, have the power to hire and fire employees." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1160 (E.D.N.Y. 2003). As described in the Amended Complaint, it was the EFC, and not any of the Individual Defendants, that "denied Plaintiff reappointment, terminating her employment effective on or about August 26, 2020." Am. Compl. ¶ 160. Although Plaintiff alleges that the Individual Defendants were on the EFC, *id.*, she does not allege that the Individual Defendants themselves had the power to hire or fire employees, or even played a role in the EFC's determination to not reappoint her. Because this does not satisfy the threshold level of authority under the NYSHRL, Counts 13 through 15 must be dismissed.

### VI.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE INDIVIDUAL

DEFENDANTS UNDER THE NYCHRL.

### a. NYCHRL claims are barred by sovereign immunity.

Plaintiff's NYCHRL claims against the Individual Defendants (Counts 16-18) are barred by New York State's sovereign immunity. New York State has not waived its sovereign immunity to NYCHRL claims. *Khalil v. State of N.Y.*, 17 Misc. 3d 777, 785-86 (Sup. Ct. N.Y. Cnty. 2007). "Claims seeking money damages which arise out of actions and determinations made by State officials acting in their official roles are, in essence, actions against the State for the State is the real party in interest." *Bertoldi v. State of N.Y.*, 275 A.D.2d 227 (1st Dep't 2000).  The actions of which Plaintiff complains, such as improperly supervising or not reappointing her, could only be taken in the Individual Defendants' capacities as State employees, not in their personal capacities. *See Ajoku v. N.Y.S. O.T.D.A.*, 2020 WL 886160, at \*4 (Sup. Ct. N.Y. Cnty. Feb. 20, 2020) ("Plaintiff argues that [NYCHRL claims] survive to the extent that they are premised upon the individual defendants' personal acts as opposed to the actions undertaken in her official capacity. Here, the complaint is devoid of any acts outside the individual defendant's official roles of hiring, supervising, and terminating plaintiff. Therefore, this argument fails."); *Emengo v. State*, 2015 WL 13828373 at \*3 (Sup. Ct. N.Y. Cnty. 2015) ("The State, its instrumentalities, and employees, engaged in carrying on the State's governmental functions, are not subject to the provisions of the NYCHRL."); *but see Purdie v. City Univ. of N.Y.*, 2015 WL 129552 (S.D.N.Y. Jan. 8, 2015) (allowing NYCHRL claims against CUNY administrators in their individual capacity).[5]

### b. Plaintiff Does Not Satisfy the Standard for Stating a Claim under the NYCHRL.

Even if the Individual Defendants were subject to liability under the NYCHRL, Plaintiff

---

[5] The District Court's interpretation of state law in *Purdie* is not binding on this Court, and this Court should decline to follow it. *Purdie* parts ways with the cited New York state courts, and because this is an issue of state sovereign immunity in connection with a city law, this Court should defer to New York State court interpretation of state law.

fails to satisfy the standards for stating a claim thereunder. "Courts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible[.]" *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal citations omitted). However, "the NYCHRL is not a general civility code ... [and] plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110 (internal quotation marks omitted). Because Plaintiff has provided no basis to form an inference of discriminatory motive for the reasons set forth above, her NYCHRL discrimination claim must be dismissed.

In bringing a retaliation claim under the NYCHRL, Plaintiff must plausibly allege facts capable of supporting the same *prima facie* case as is required by both Title VII and the NYSHRL, "except that the plaintiff need not prove any adverse employment action; instead, she must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity[.]" *Springs v. City of New York*, No. 19 CIV. 11555 (AKH), 2020 WL 3488893, at *5 (S.D.N.Y. June 26, 2020), citing *Benziger v. Lukoil Pan Americas, LLC*, —— F.3d ——, 2020 WL 1322478, at *20 (S.D.N.Y. Mar. 20, 2020) (quotation marks and alterations omitted). Because Plaintiff has failed to satisfy the causation prong in the Title VII analysis set forth above, her retaliation claim under NYCHRL must be dismissed. *Id.*

Finally, to bring a hostile work environment claim under the NYCHRL, a "plaintiff need not establish that the conduct was severe or pervasive, only that she has been treated less well than other employees because of" a protected characteristic. *Springs*, No. 19 CIV. 11555 (AKH), 2020 WL 3488893, at *7 (S.D.N.Y. June 26, 2020), citing *Russo v. N.Y. Presbyterian Hosp.*, 972 F.Supp.2d 429, 450 (E.D.N.Y. 2013) (quotation marks omitted). But the alleged treatment still

must be more than a mere "petty slight" or "trivial inconvenience." *Id.* Even under this "more liberal standard," a plaintiff must still show that the unequal treatment was "at least in part for discriminatory reasons." *Id.*, citing *Bright v. Coca-Cola Refreshments USA, Inc.*, No. 12 Civ. 234, 2014 WL 5587349, at *2 (E.D.N.Y. Nov. 3, 2014), *aff'd sub nom.*, 639 F. App'x 6 (2d Cir. 2015); *see also, e.g., Zabar v. N.Y.C. Dep't of Educ.,18-cv-6657(PGG)*, 2020 WL 2423450, at *11 (S.D.N.Y. May 12, 2020) ("[E]ven under this minimal [NYCHRL] standard, a plaintiff must plausibly allege that ... she was subjected to unequal treatment *because of* her protected characteristic.") (quotation marks omitted) (emphasis added).   A NYCHRL claim must be dismissed "if the plaintiff does not allege behavior by the defendant that cannot be said to fall within the broad range of conduct that falls between severe and pervasive on the one hand and a petty slight or trivial inconvenience on the other," *Bright*, 2014 WL at *2, or if the plaintiff fails to meet her "burden of showing that the conduct is caused by a discriminatory motive," *Isbell v. City of New York*, 316 F.Supp.3d 571, 593 (S.D.N.Y. 2018); *accord Dillon v. Ned Mgmt., Inc.*, 85 F.Supp.3d 639, 657 (E.D.N.Y. 2015) ("Plaintiff nonetheless has the burden of showing that the ... conduct complained of was caused by a discriminatory motive."). For the reasons described *supra*, Plaintiff has failed to show that any of the complained of conduct was caused by discriminatory motive. Her NYCHRL hostile work environment claim must therefore be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety, and grant such other and further relief as it deems to be just and proper.

Dated: New York, New York
      May 6, 2022

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants CUNY, Dani McBeth, Nancy Sohler and Erica Friedman*

By:  _____
Jaclyn D. Saffir
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6286
Jaclyn.Saffir@ag.ny.gov

To:     (all counsel of record via ECF)