UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

FAITH MILLER-SETHI,

                    Plaintiff,

- against -

CITY UNIVERSITY OF NEW YORK, DANI
MCBETH, NANCY SOHLER and ERICA
FRIEDMAN

                    Defendants.
-------------------------------------------------------X

**Case No. 21-cv-8591 (JPO)**

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

JASPER & JASPER, PLLC
*Attorneys for Plaintiff*
17 State Street; Suite 4000
New York, New York 10004
212.634.9949

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ ii

PRELIMINARY STATEMENT ...................................................... 1

SUMMARY STATEMENT OF FACTS ........................................... 3

STANDARD OF REVIEW ............................................................ 4

ARGUMENT ............................................................................. 6

    I.    PLAINTIFF STATES CLAIMS AGAINST CUNY UNDER TITTLE VII ............ 6

        a.    Plaintiff Has Stated a Claim for Disparate Treatment ...................................... 6

        b.    Plaintiff Has Stated a Claim for Hostile Work Environment ......................... 12

        c.    Plaintiff Has Stated a Claim for Retaliation .................................... 16

    II.    PLAINTIFF STATES CLAIMS AGAINST CUNY UNDER TITTLE VI ........ 19

    III.    PLAINTIFF STATES CLAIMS FOR EMPLOYMENT DISCRIMINATION AGAINST INDIVIDUAL DEFENDANTS UNDER FEDERAL LAW ................................ 20

        a.    Plaintiff's Section 1981 Claims ...................................................... 20

        b.    Plaintiff's Section 1983 Claims ...................................................... 20

    IV.    PLAINTIFF STATES CLAIMS FOR EMPLOYMENT DISCRIMINATION AGAINST INDIVIDUAL DEFENDANTS UNDER STATE AND LOCAL LAW .............. 22

        a.    Plaintiff's New York State Human Rights Law Claims ................................... 22

        b.    Plaintiff's New York City Human Righs Law Claims .................................... 20

    CONCLUSION ........................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Alfano v. Costello,*
   294 F.3d 365, 379 (2d Cir. 2002)............................................................................................... 13

*Allessi v. N.Y. State Dept. of Corr. & Cmty. Supervision,*
   16 F. Supp. 3d 221 (W.D.N.Y. 2014) ........................................................................................ 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................................................... 5

*Back v. Hastings On Hudson Union Free Sch. Dist.,*
   365 F.3d 107, 122 (2d Cir. 2004)............................................................................................... 21

*Bakeer v. Nippon Cargo Airlines, Co.,* 09–cv–3374 (RRM),
   2011 WL 3625103 (E.D.N.Y. July 25, 2011) ........................................................................... 11

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)................................................................................................................. 4, 5

*Berger-Rothberg v. City of New York,*
   803 F. Supp. 2d 155 (E.D.N.Y. 2011) ...................................................................................... 14

*Bonaffini v. City Univ. of N.Y.,* 20-cv-5118 (BMC),
   2021 WL 2895688 (E.D.N.Y. July 9, 2021).......................................................................... 22, 23

*Boykin v. KeyCorp.,*
   521 F.3d 202 (2d Cir. 2008)......................................................................................................... 5

*Brodt v. City of New York,*
   4 F. Supp. 3d 562 (S.D.N.Y. 2014) ........................................................................................... 10

*Brown v. Daikin Am. Inc.,*
   756 F.3d 219 (2d Cir. 2014).............................................................................................. 6,10,11

*Burlington N. & Santa Fe Ry. Co. v. White,*
   548 U.S. 53, 67 (2006)......................................................................................................... 16, 17

*Burnette v. Carothers,*
   192 F.3d 52 (2d Cir. 1999)......................................................................................................... 20

*Caulfield v. Bd. of Educ.,* 486 F. Supp. 862
   (E.D.N.Y. 1979) ......................................................................................................................... 19

*Chang v. N.Y.C. Dept. for the Aging,*
   11–cv–7062 (PAC)(JLC), 2012 WL 1188427,(S.D.N.Y. Apr. 10, 2012) ................................... 7

*Chinn v. City Univ. of New York Sch. of Law,*
   963 F. Supp. 218 (E.D.N.Y. 1997) ........................................................................................... 21

*Collins v. Potter,*
   05–cv–3474 (JFB)(LB), 2008 WL 4104459 (E.D.N.Y. Aug. 29, 2008)...................................... 8

*Colon v. Coughlin,*
   58 F.3d 865 (2d Cir. 1995)......................................................................................................... 22

*Deravin v. Kerik*,
   335 F.3d 195 (2d Cir. 2003) ........................................................................... 6

*Dodd v. City Univ. of N.Y.*,
   489 F. Supp. 3d 219 (S.D.N.Y. 2020) ....................................................... 22, 24

*Drew v. Plaza Constr. Corp.*,
   688 F. Supp. 2d 270 (S.D.N.Y. 2010) ............................................................. 6

*Edwards v. Jericho Union Free Sch. Dist.*,
   904 F.Supp.2d 294 (E.D.N.Y. 2012) ............................................................. 23

*EEOC v. Port Auth. of N.Y. & N.J.*,
   768 F.3d 247 (2d Cir. 2014) ........................................................................... 5

Ex Parte Young,
   209 U.S. 123 (1908) ...................................................................................... 20

*Falcon v. City Univ. of N.Y.*,
   15-cv-3421 (ADS)(ARL) 2016 WL 3920223  (E.D.N.Y. July 15, 2016) ......................... 21, 22

*Feingold v. New York*,
   366 F.3d 138 (2d Cir. 2004) ......................................................................... 12

*Fried v. LVI Servs., Inc.*,
   10-cv-9308 (JSR), 2011 WL 2119748 (S.D.N.Y. May 23, 2011) ...................... 24

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir.2000)). ........................................................................... 10

*Grullon v. City of New Haven*,
   720 F.3d 133 (2d Cir. 2013) ......................................................................... 22

*Harris v. Forklift Systems, Inc.*,
   510 U.S. 17 (1993) ....................................................................................... 12

*Hayes v. Cablevision Sys. New York City Corp.*,
   07-cv-2438, 2012 WL 1106850 (E.D.N.Y. Mar. 31, 2012) ............................ 14

*Henry v. NYC Health & Hosp. Corp.*,
   18 F.Supp.3d 396 (S.D.N.Y.2014) .................................................................. 7

*Hicks v. Baines*,
   593 F.3d 159 (2d Cir. 2010) .................................................................... 16, 17

*Hoag v. Fallsburg Cent. Sch. Dist.*,
   279 F. Supp. 3d 465  (S.D.N.Y. 2017) .......................................................... 14

*Huffman v. Brooklyn College*,
   2022 WL 43766 (E.D.N.Y. Jan. 5, 2022) ........................................................ 5

*John v. Kingsbrook Jewish Med. Ctr./Rutland Nursing Home*,
   11-cv-3624, 2014 WL 1236804, (E.D.N.Y. Mar. 25, 2014),
   *aff'd*, 598 F. App'x 798 (2d Cir. 2015) ......................................................... 14

*Johnson v. Andy Frain Servs., Inc.* ,
   638 Fed.Appx. 68 (2d Cir.2016) ............................................................... 7, 23

*Jute v. Hamilton Sundstrand Corp.*,
    420 F.3d 166, 173 (2d Cir. 2005)........................................................................ 16

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007)............................................................................... 13

*Kaytor v. Elec. Boat Corp.*,
    609 F.3d 537 (2d Cir. 2010)............................................................................... 14

*Koumantaros v. City Univ. of New York*,
    03-cv-10170, 2007 WL 840115 (S.D.N.Y. 2007) ................................................ 19

*Kulkarni v. City Univ. of New York*,
    2001 WL 1415200 (S.D.N.Y. Nov. 13, 2001)..................................................... 21

*LaFaro v. N.Y. Cardiothoracic Grp., PLLC*,
    570 F.3d 471 (2d Cir. 2009)................................................................................. 4

*Lanzo v. City of New York*, 2000 WL 804628
    (E.D.N.Y. May 18, 2000) ................................................................................ 19

*Levy v. Legal Aid Soc'y*,
    408 F.Supp.3d 209 (E.D.N.Y. 2019) .................................................................. 23

*Lewis v. Roosevelt Island Operating Corp.*,
    246 F. Supp. 3d 979 (S.D.N.Y. 2017).................................................................. 14

*Little v. NBC*,
    210 F.Supp.2d 330, 384 (S.D.N.Y. 2002) ............................................................. 8

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir.2015).......................................................................... 5, 7, 10

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012).............................................................................. 23

*Loren v. Levy*,
    2001 WL 921173 (S.D.N.Y. Aug. 14, 2001)...................................................... 21

*Mathirampuzha v. Potter*,
    548 F.3d 70 (2d Cir. 2008)................................................................................... 7

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)......................................................................................... 16

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)........................................................................ 23, 24

*Miles v. Baruch College*,
    07-cv-1214, 2008 WL 222299, (E.D.N.Y. January 25, 2008)............................... 21

*Norville v. Staten Island Univ. Hosp.*,
    196 F.3d 89 (2d Cir. 1999)................................................................................ 10

*Nunez v. Cuomo*,
    11–cv–3457, 2012 WL 3241260, (E.D.N.Y. Aug. 7, 2012)................................. 23

iv

*Patane v. Clark,*
   508 F.3d 106 (2d Cir. 2007)..................................................................................... 12, 14

*Pennhurst State Sch. Hosp. v. Halderman,*
   465 U.S. 89 (1984) .......................................................................................................... 20

*Peries v. N.Y.C. Bd. of Educ.,*
   97-cv-7109 (ARR), 2001 WL 1328921 (E.D.N.Y. Aug. 6, 2001) ................................. 14

*Pothen v. Stony Brook Univ.,*
   211 F. Supp. 3d 486 (E.D.N.Y. 2016) ................................................................... 10, 12

*Redd v. New York Div. of Parole,*
   678 F.3d 166 (2d Cir. 2012)........................................................................................ 12

*Risco v. McHigh,*
   868 F. Supp. 2d 75 (S.D.N.Y. 2010)............................................................................ 17

*Ruiz v. Cnty. of Rockland ,*
   609 F.3d 486 (2d Cir. 2010)........................................................................................... 7

*Smith v. St. Luke's Roosevelt Hosp.,*
   08-cv-4710, 2009 WL 2447754 (S.D.N.Y. Aug. 11, 2009),
   *report and recommendation adopted,* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009)................ 9

*Smith v. State Univ. of N.Y.,*
   00–cv–1454, 2003 WL 1937208 (N.D.N.Y. Apr. 23, 2003) ..................................... 23

*Sommersett v. City of New York,*
   09-cv-5916 (LTS), 2011 WL 2565301 (S.D.N.Y. June 28, 2011). .......................... 6

*Stevens v. State,*
   691 F. Supp. 2d 392 (S.D.N.Y. 2009)......................................................................... 24

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002)................................................................................................. 5, 6

*Trachtenberg v. Department of Educ. of City of New York ,*
   937 F.Supp.2d 460 (S.D.N.Y. 2013)........................................................................ 11

*Vega v. Hempstead Union Free Sch. Dist.,*
   801 F.3d 72 (2d Cir. 2015)........................................................................................ 5-7

*Williams v. N.Y.C. Hous. Auth.,*
   872 N.Y.S.2d 27, 39 (1st Dept. 2009) ...................................................................... 24

*Williams v. N.Y.C. Transit Auth.*
   97 N.Y.S.3d 692 (2d Dept. 2019) ............................................................................ 23

*Wolf v. Time Warner, Inc.,* 548 Fed.Appx. 693, (2d Cir. 2013) ................................... 24

*Zelnik v. Fashion Inst, of Tech.,*
   464 F.3d 217, 227 (2d Cir. 2006)............................................................................. 17

## Federal Statutes

42 U.S.C. § 1981 ................................................................................................... *passim*

42 U.S.C. § 1983 ............................................................................................. *passim*

42 U.S.C. §§ 2000-d, *et seq* ......................................................................... *passim*

42 U.S.C. § 2000e, *et seq.* ............................................................................ *passim*

**Federal Rules**

Fed R. Civ. P. 8(a) ................................................................................................ 6

Fed R. Civ. P. 12(b) ......................................................................................... 2, 4

**Other Federal Authorities**

U.S. Const. 11 Amend. ............................................................................... 3, 20, 21

34 C.F.R. § 100.3 ............................................................................................... 19

**State Statutes**

N.Y. Executive Law § 290, *et seq.* .......................................................... 1, 22-24

**Local Statutes**

New York City Administrative Code, § 8-101, *et seq* ............................... 1, 23, 24

## PRELIMINARY STATEMENT

Plaintiff Miller-Sethi is a Black woman of African-American descent, who is a Doctor of Public Health and holds a Master of Public Health in Population and Family Health. She was hired as the Clinical Professor/Course Director for the Evaluation in Healthcare Settings ("EHS") course at City University of New York School of Medicine (the "Medical School"), a member institution of the City University of New York, located at City College ("CUNY") in January 2019 and worked in the position for the Medical School, until she was unlawfully terminated on the pretext of ministerial violations of administrative policy in August 2020, when she was terminated for the discriminatory reason of her race and in retaliation for the protected activity of complaining of discriminatory treatment and a racially hostile environment in her employment. Plaintiff was supervised and treated differently than other employees with similar job duties and responsibilities, was subjected to unlawful discrimination, a hostile work environment and retaliation in response to her internal complaints of discriminatory treatment in her employment with CUNY, where Defendants McBeth, Sohler and Friedman each worked in supervisory and administrative positions as deans of the Medical School. Plaintiff suffered physical, emotional, economic and reputational damage as a result of the deliberately racially inhospitable and unwelcoming environment, including termination for complaining of the same.

Plaintiff filed the instant action (Dkt. No. 1) and filed her Amended Complaint (Dkt. Nos. 30, refiled at 31), to remedy discrimination against her by Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-d, *et seq.* ("Title VI"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"); the New York State Human Rights Law, Executive Law§ 290, *et seq.* (the "SHRL"); and the New York City Administrative Code, § 8-101, *et seq.* (the "CHRL"). By her Amended Complaint Plaintiff seeks

injunctive and declaratory relief, compensatory, liquidated, and punitive damages, and other appropriate legal and equitable relief.

Defendants move this Court (Dkt Nos. 37-39), pursuant to Fed R. Civ. P. 12(b) (1) and (6) to dismiss the Amended Complaint on the grounds that Plaintiff's claims fail as a matter of law. Defendants urge that Plaintiff has failed to allege any evidence of race-based discrimination or provide more than conclusory allegations of differential treatment in support of her claims under Title VII.[1]  On the contrary, Plaintiff's pleadings enumerate several disparate adverse employment actions, being denied benefits of her position, being stripped of her job functions, saddled with burdensome levels of non-essential administrative tasks, be subjected to admittedly-racist harassment, public humiliation, and, ultimately, being terminated from employment.

Defendants also assert that Plaintiff has failed to satisfy the threshold requirements of her Title VI claims against CUNY and urge this Court to dismiss them as well.  Def. Br. p. 2.  Rather, Plaintiff has plead sufficient details to nexus her allegations of discrimination to the federal funding as required by the applicable law.

Next, Defendants claim that all of Plaintiff's claims against McBeth, Sohler and Friedman (collectively "Individual Defendants"), additionally fail because there is no private action under Section 1981, she did not allege the requisite personal involvement of the Individual Defendants required to establish liability and because they are shielded from liability by sovereign immunity. *Id.* First, Section 1981 provides Plaintiff with equitable and injunctive relief that she has asked this Court for.  Second, Plaintiff has plead copious facts of the direct, material and personal involvement of each of the Individual Defendants in the course of the discrimination that she was subjected to.  Second as has been well-settled against CUNY agents, the sovereign immunity

---

[1] Defendants' Memorandum of Law in Support of Motion to Dismiss the Amended Complaint, Dkt. No. 39, herein after "Def. Br.", at page 1.

enjoyed by CUNY under the Eleventh Amendment from the applicable state and local statutes, does not extend to its employees, who remain subject to liability as aiders or abettors.

For each and for all the above reasons, as detailed more fully *infra*, Defendants' motion must be denied in its entirety.

## SUMMARY STATEMENT OF FACTS

Plaintiff's Verified Amended Complaint (Dkt Nos. 30, refiled at 31), sets forth over 150 paragraphs of factually allegations describing the discrimination that she was subjected to based on her race, facing disparate treatment, a hostile work environment and retaliation at the hands of Defendants. Briefly, her factual allegations are as follows:

Plaintiff is a is a Black woman of African-American descent, who was hired as the Clinical Professor/Course Director for the Evaluation in Healthcare Settings course in January 2019 until she was unlawfully terminated on the pretext of ministerial violations of administrative policy in March 2020, to be effective in August 2020, for the discriminatory reason of her race and in retaliation for the protected activity of complaining of discriminatory treatment and a racially hostile environment in her employment. Plaintiff was supervised and treated differently than other employees outside her protected class, with similar job duties and responsibilities. AC ¶ 2-3 [2]. Under the supervision of Defendant Sohler, Plaintiff was subjected to disparate treatment compared to people outside of her protected class, including over-assignment of ministerial tasks, refusal to access to funding of professional development afforded to white faculty, and received a knowingly false performance review from Sohler detailing failings, which had not only not occurred but were predicated on discriminatory animus known to Sohler. *See e.g.,* AC ¶¶ 36 *et seq.*

---

[2] Citations to "AC" refer to the Verified Amended Complaint, Dkt Nos. 30, refiled at 31.

Plaintiff further alleges that she was the victim of admittedly racial harassment by a student and that Defendants not only took no steps to mitigate the hostility but condoned it by permitting the student to bypass discipline and receive credit for Plaintiff's mandatory EHS course, without having to attend. AC ¶¶56, et seq..  Plaintiff alleges that she was aware of other complaints of racial hostility at CUNY and that other Black instructors shared some of her concerns. AC ¶¶ 99,140, 144 and 164.

Plaintiff complained of this discrimination and hostility, to which Defendants responded with escalating abusive work demands, removal of Plaintiff from her teaching, assignment to exclusively ministerial administrative tasks, and ultimately, termination. AC ¶¶ 72, 138, 139, 145

Further, Plaintiff alleges that the discrimination that she faced was habitual, endemic and contravened the mission of the Medical School, which receives federal aid, to the injury of Plaintiff and other intended beneficiaries of that aid. AC ¶¶ 15, 192, 193.

By her Amended Complaint, Plaintiff seeks injunctive and declaratory relief, as well as compensatory, liquidated and punitive damages. AC ¶¶ 5, *and see* AC, p.55, Prayer for Relief.

As discussed more fully below, taken as a totality, Plaintiff has adequately met the requisite standard of pleading for her claims to proceed at this stage, and the Defendants' motion to dismiss her amended complaint should be denied in its entirety.

## STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Second Circuit has directed lower courts to consider three factors in assessing whether a plaintiff has "plausibly" alleged facts that give rise to an inference of discrimination. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015). First, Plaintiff must plead "factual content" (which the court assumes to be true), and not formulaically recite the legal elements of an allegation. *Id.* at 86. Second, the court must draw on its judicial experience and common sense, mindful that in discrimination cases evidence is elusive, easily concealed, and the concomitant frequency by which plaintiffs must "rely on bits and pieces" of information to support an inference of discrimination. *Vega*, 803 F.3d at 86 (citation, italics, and some quotation marks omitted). Courts making the plausibility determination "must be mindful of the elusive nature of intentional discrimination." At the motion to dismiss stage Plaintiff's burden is minimal. *Huffman v. Brooklyn College,* 2022 WL 43766 (E.D.N.Y. Jan. 5, 2022) (citing *Vega* at 86, quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015) (requiring only "minimal support for the proposition that the employer was motivated by discriminatory intent"). Third, the court must be careful not to require Plaintiff to convince it that it is "likely to prevail." *Id.* at 87 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (requiring that plaintiffs merely "nudge[] their claims across the line from conceivable to plausible" to proceed)); *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal omitted).

In the context of employment discrimination claims, Plaintiff need not allege "specific facts establishing a prima facie case" to survive a motion to dismiss. *Boykin v. KeyCorp.,* 521 F.3d 202, 212 (2d Cir. 2008) (*citing Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002)) (internal

quotation marks omitted).  The pleading must be merely "facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim," *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 228 n.10 (2d Cir. 2014), and "[t]he elements [of a *prima facie* case can] help provide an outline of what is necessary to render [Plaintiff's] claims for relief plausible," *Sommersett v. City of New York*, 09-cv5916 (LTS), 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011).  In discrimination cases, the plaintiff's burden at this stage is "very lenient, even *de minimis*." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (internal quotation marks omitted).  "[A]n employment discrimination complaint "must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (citation and alteration omitted) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)); Fed. R. Civ. P. 8(a).

Here, Plaintiff has more than sufficiently plead facts to support her claims.  In over 150 paragraphs of verified factual allegations, Plaintiff details the acts of discrimination, large and small, habitual, pervasive and varied disparate treatment, "*i.e.*, a 'mosaic' of intentional discrimination" (*Vega*, 803 F.3d at 86), that collectively meets the requirement that her claims be facially plausible.  Thus, as set forth more fully *infra*, Defendants' motion to dismiss the Amended Complaint should be dismissed in its entirety.

## ARGUMENT
### I.  PLAINTIFF STATES CLAIMS AGAINST CUNY UNDER TITLE VII
#### a.  Plaintiff Has Stated a Claim for Disparate Treatment

Title VII makes it unlawful for CUNY "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" because of race 42 U.S.C. § 2000e–2(a).  To establish a *prima facie* case of employment discrimination under Title VII, Plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for the

6

position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination." *Chang v. N.Y.C. Dept. for the Aging*, 11-cv-7062 (PAC)(JLC), 2012 WL 1188427, at *4 (S.D.N.Y. Apr. 10, 2012) (*quoting Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir.2010)) (report & recommendation adopted, 2012 WL 2156800 (S.D.N.Y. June 14, 2012).

At the pleading stage, Plaintiff need not allege specific facts establishing each element of her *prima facie case* of discrimination. *Vega* at 84 (2d Cir. 2015). Plaintiff must plausibly allege that (1) the employer took adverse action against her and (2) her race or color was a motivating factor in the employment decision." *Id.* at 86. "'[A]t the initial stage of the litigation' in a Title VII case, 'the plaintiff does not need substantial evidence of discriminatory intent.'" *Johnson v. Andy Frain Servs., Inc.*, 638 Fed.Appx. 68, 70 (2d Cir.2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir.2015)).

Defendants argue that Plaintiff's discrimination claims should be dismissed because most of the alleged actions do not constitute "adverse employment actions" under Title VII and the pleading does not include sufficient factual allegations to support a conclusion that any adverse employment action occurred under circumstances giving rise to an inference of discrimination. Def. Br. pp. 10-11. On the contrary, Plaintiff alleges both adequate adverse employment actions and their occurrence under circumstances giving rise to an inference of discrimination.

### 1. Adverse Employment Actions

To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Henry v. NYC Health & Hosp. Corp.*, 18 F.Supp.3d 396, 404 (S.D.N.Y. 2014) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir.2008)). "[T]here is no exhaustive list of what constitutes an

adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions." *Collins v. Potter*, 05-cv-3474 (JFB)(LB), 2008 WL 4104459, at *4 (E.D.N.Y. Aug. 29, 2008) (quoting *Little v. NBC*, 210 F.Supp.2d 330, 384 (S.D.N.Y.2002)).

Here it is undisputed by Defendants that Plaintiff's non-reappointment to her position at CUNY is an adverse employment action. Def. Br. pp. 10-11 *and see* AC ¶160, *et seq.*.  However, Plaintiff alleges several additional adverse employment actions which are improperly discounted by Defendants.  For example, Plaintiff was stripped of her job responsibilities, effectively demoted, removed as the director of the EHS course (AC ¶ 165), and her responsibilities were taken over by Defendant Sohler, who also grabbed all of Plaintiff's professional relationships and work product (AC ¶ 166).  Previously, Defendants usurped Plaintiff's professional position as Director of EHS by surreptitiously waiving the requirement of a student to complete the required placement of the course, after the student had been withdrawn for cause, and in contravention to the Medical School's requirements.  AC ¶ 23.  Plaintiff was regularly saddled with additional administrative responsibilities, which were not also demanded of similarly situated faculty outside of her protected class.  AC ¶¶ 51, 54, 94, 111-114, 129-131, 161.  Earlier, Plaintiff had been reprimanded and received a negative performance review for allegedly improperly disclosing confidential student information.  However, the other faculty member involved, who is both similarly situated to Plaintiff in material respects (AC ¶ 84), and not Black, was not similarly disciplined (AC ¶ 81). Plaintiff alleges several things that constitute denial of benefits of her employment: that she was

not afforded the normal and expected autonomy of faculty afforded to white faculty (AC ¶¶ 38, 50, 74-77); she was not allocated any funds for professional development to attend conferences, and after being told it was because she was not presenting, Defendants funded 10 white members of the faculty to attend a conference, where none of them were presenting, at an expense of over $45,000, (AC ¶ 119, 120); Plaintiff was denied committee assignments (AC ¶103-106), including being admittedly rejected, in favor of a white committee member (AC ¶ 104), while another committee was another, less professionally qualified white staff member not only sat on, but chaired a committee (AC ¶ 105); Defendants intentionally gave credit for Plaintiff's work to a member outside of her protected class (AC ¶ 155).

While Defendants characterize these issues as immaterial, they also urge that "[a] number of issues arose with Plaintiff's work performance…as a result, Plaintiff was not reappointed after the term of her appointment expired. Def. Br. p. 1. Defendants cannot assert these were sufficient to result in termination of Plaintiff's employment, while challenging their sufficiency as material to the terms of Plaintiff's employment.

This necessarily "fact-specific determination cannot be resolved on a motion to dismiss" *Smith v. St. Luke's Roosevelt Hosp.*, 08-cv-4710, 2009 WL 2447754, at *23-24 (S.D.N.Y. Aug. 11, 2009), *report and recommendation adopted*, 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009) (allowing a disparate treatment claim, where the plaintiff alleged that he was assigned to tasks that were not part of his job description because he was not Hispanic).

### 2. Inference of Discrimination

In the absence of an express discriminatory statement, a plaintiff may support an inference of discrimination by demonstrating that similarly situated employees outside of Plaintiff's protected class were treated more favorably. *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89,

95 (2d Cir. 1999). Importantly, "[t]o support such an inference, a complaint 'must compare' the plaintiff to employees who are "similarly situated in all material respects."' *Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting *Norville*, 196 F.3d at 95).  What satisfies this requirement "will vary from case to case," and while Plaintiff's and the comparator's circumstances need not be identical, they "must bear a reasonably close resemblance." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014).

In general, "[a]n inference of discrimination can arise from more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted). Generally, "[w]hether two employees are similarly situated ... presents a question of fact," rather than a legal question to be resolved on a motion to dismiss. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229–30 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000))*.* At the pleading stage, allegations that Plaintiff and comparators worked in the same group and were accountable to the same supervisors but were subjected to disparate treatment may be sufficient to raise an inference of discrimination. *Id.* (concluding that plaintiff plausibly alleged he and comparator employees were similarly situated even though he did not plead facts about the comparator employees' job function, experience, qualifications, and rate of pay) *and see Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486 (E.D.N.Y. 2016).

Here, Plaintiff has alleged multiple instances where she was treated differently than similarly situated people: e.g., she was not afforded the normal professional autonomy of professors, which was given to white professors (AC ¶ 38, 39), she was not permitted funding for to attend professional development events, when similarly situated white colleagues were (AC ¶ 119-122); she was criticized for disclosing student information, when a white professor was not

(AC ¶ 81, *et seq.*)[3]; she was written up for not publishing (AC ¶ 153), when white professors did not publish, she was stripped of her teaching duties, when her white predecessors were not (AC ¶ 161), she was undermined in her relationship and authority as a professor, when her white predecessors in her position were not (AC ¶ 74-80); she was assigned to bloated administrative duties, when her white colleagues were not (AC ¶¶ 51, 54, 95, 111-114, 129-131, 161); she was required to be accept additional course assignments, when colleagues outside of her protected class were not (AC ¶148); and she was terminated for failing to overcome these discriminatory disparities (AC ¶ 160).

"Drawing all reasonable inferences in Plaintiff's favor, this is more than sufficient to state a plausible inference of discrimination. *See Bakeer v. Nippon Cargo Airlines, Co*., 09-cv-3374 (RRM), 2011 WL 3625103, at *27–28 (E.D.N.Y. July 25, 2011) (finding plaintiffs' allegations that their comparators were offered different terms and conditions of employment was sufficient to establish that they were similarly situated, without pleading additional facts about how they were similarly situated); *Trachtenberg v. Department of Educ. of City of New York*, 937 F.Supp.2d 460, 471 (S.D.N.Y. 2013) (denying motion to dismiss even though the complaint was "thin on specifics—both as to how each comparator [was] similarly situated to [plaintiff] and what disparate treatment he or she was subjected to"); *Brown*, 756 F.3d at 230 (rejecting defendant's argument that plaintiff was required to specifically allege comparator employees had the same job function, experience, qualifications, and rate of pay and finding that it is reasonable to conclude when drawing all reasonable inferences in favor of plaintiff that employees were subject to the same performance evaluation and disciplinary standards, and therefore similarly situated in their

---

[3] In a footnote Defendants assert that the only similarly situated person that Plaintiff identifies by name was not similarly situated, because she was a tenured, while Plaintiff was not. Def Br. p. 13, Note 3.  However, it is well established law that comparators do not have to have identical titles or be similarly situated in all respects, only in those ways which are material, which Plaintiff expressly alleges (AC ¶ 84)

employment circumstances based on allegations that the employees worked in the same group)." *Pothen v. Stony Brook Univ.,* 211 F. Supp. 3d 486, 493-95 (E.D.N.Y. 2016).

    **b.**    **Plaintiff Has Stated a Claim for Hostile Work Environment**

In order to prevail on a hostile work environment claim, Plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive, creating an environment that a reasonable person would find hostile or abusive; (2) creates an environment that Plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of Plaintiff's race or color. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks, citations, and alterations omitted).

In considering whether Plaintiff has met this burden, courts should examine the totality of the circumstances" *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The question is whether a reasonable person would have found the environment to be hostile and if Plaintiff perceived it as such. Among the factors considered by Courts are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004). Plaintiff does not need to show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions. *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (citation and quotation marks omitted, emphasis supplied.)

The Second Circuit has specified that at the pleading stage of a case, Plaintiff does not need to plead a *prima facie* case of discrimination based on hostile work environment, so long as she provides in her pleading "a short and plain statement of the claim that shows that [she is] entitled to relief and that gives [Defendants] fair notice of plaintiffs' claim for hostile work environment

and the grounds upon which that claim rests." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 241 (2d Cir. 2007).  There is no fixed number of incidents that Plaintiff must endure in order to establish a hostile work environment; rather, Courts "view the circumstances in their totality, examining the nature, severity, and frequency of the conduct." *Alfano v. Costello*, 294 F.3d 365, 379 (2d Cir. 2002).

Here, Plaintiff alleges that she was the target of a campaign of harassment by a student (identified in the AC as "AP"), who she feared (AC ¶ 67), and who was dismissed from Plaintiff's EHS course, and who had instigated a flurry of false complaints against Plaintiff by other students (AC ¶ 88), and was racially hostile towards Plaintiff in their interactions (AC ¶ 78).  Defendant Sohler approached Plaintiff and volunteered that she believed AP's harassing behavior was motivated by racial animus.  AC ¶ 66.  Rather than take any steps to rectify the situation, Defendants suborned the racially hostile behavior by verbally attacking Plaintiff in a meeting (AC ¶ 61), surreptitiously arranging for the student to be excused from the requirements of Plaintiff's EHS course (AC ¶ 74-80), (which is a mandated course in the curriculum), refused to take action on Plaintiff's formal complaint about the student's conduct (AC ¶ 64, 65, 69), and then criticized Plaintiff in a written evaluation both for the knowingly false (AC ¶ 151), student complaints against her, (AC ¶  86-91), and also for failing to properly lodge a complaint against AP (AC ¶ 151).  Further, after covertly arranging for AP to receive credit for Plaintiff's required course, Defendants misrepresented their actions on in Plaintiff's performance review, writing instead that AP had received an incomplete. AP ¶ 150.

The harassing behavior orchestrated by AP was both objectively severe and served to humiliate, embarrass and distress Plaintiff.  Plaintiff's allegations that Defendants' failure to remedy AP's disruptive and aggressive actions, much less to aid the student in undermining

Plaintiff, is sufficient to plead a claim for a hostile work environment and that similarly situated employees outside of Plaintiff's protected class were treated differently. *Hoag v. Fallsburg Cent. Sch. Dist.,* 279 F. Supp. 3d 465, 481 (S.D.N.Y. 2017) and *Berger-Rothberg v. City of New York*, 803 F. Supp. 2d 155, 164-65 (E.D.N.Y. 2011).   (acknowledging that student-on-teacher harassment can satisfy a hostile work environment claim and following the standard set forth in *Peries v. N.Y.C. Bd. of Educ*., 97-cv-7109 (ARR), 2001 WL 1328921, at *6 (E.D.N.Y. Aug. 6, 2001), holding that Plaintiff can prevail if she can show that a hostile environment existed and that the school either provided no reasonable avenue of complaint or knew of the harassment and failed to take appropriate remedial action.)

While the hostile work environment must be motivated by Plaintiff's membership in a protected class, conduct that is facially neutral can support a hostile work environment claim where there also is overt hostility based on the employee's protected status. *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 989-90 (S.D.N.Y. 2017) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547–48 (2d Cir. 2010)). In evaluating whether the circumstances suffice to find a hostile work environment, the Court of Appeals has "repeatedly cautioned against setting the bar too high." *Patane*, 508 F.3d at 113 (internal quotation marks omitted).   Thus, while Defendant McBeth's statements to Plaintiff "you don't know Long Island" and "you have to stop this" (AC ¶¶61, 71) and the student reviews calling Plaintiff among other things, 'inarticulate; maybe facially neutral, taken in the context of Defendants other conduct of undermining Plaintiff by supporting AP in her racially-motivated campaign against Plaintiff, it is reasonable to read these comments as racially coded as Plaintiff alleges (AC ¶¶ 97). *John v. Kingsbrook Jewish Med. Ctr./Rutland Nursing Home*, 11-cv-3624, 2014 WL 1236804, (E.D.N.Y. Mar. 25, 2014), , *aff'd*, 598 F. App'x 798 (2d Cir. 2015) citing *Hayes v. Cablevision Sys. New York City Corp.*, 07-cv-2438, 2012 WL

1106850, at *9 (E.D.N.Y. Mar. 31, 2012) ("A facially neutral insult could constitute harassment motivated by racial animus if uttered in an environment otherwise marked by abundant racial animosity or under circumstances that render it an expression of racial antipathy").

Further Plaintiff alleges that part of her course was replaced by a school-wide diversity training that was mandated because of racial incidents that had taken place at and had been poorly handled by CUNY. AC ¶ 97. The same cohort of students, who had participated in AP's campaign against Plaintiff with false complaints (AC ¶ 97), was permitted to submit as legitimate feedback racially-coded critiques, including '[P]laintiff is inarticulate', 'has a thing about being called 'doctor'', 'what kind of class is this to lecture us about white supremacy…she should be fired' (*Id.*). Plaintiff alleges that similarly situated white colleagues were not subject to similar derogation. For example, she alleges that while it was normative that faculty and staff with MD or PhD degrees were referred to as "Doctor", Plaintiff and another Black staff member were routinely referred to by their first names. AC¶ 98. Further, Plaintiff alleges that other Black, female faculty were also made to feel uncomfortable. AC ¶ 99. Not only does this demonstrate Plaintiff's subjective reaction to the atmosphere at CUNY, but she alleges that in 2021, Assistant Dean of Diversity Equity and Inclusion, Lynn Hernandez, gave a presentation about challenges faced by Black women faculty, including the inequity and impact of student evaluations such as experienced by Plaintiff. (AC ¶ 100).

Additionally, Plaintiff alleges that she knew of other internal complaints about the racially hostile work environment at CUNY, including within the Medical School and the public resignation of a dean at CUNY because of the racial hostility that was engendered there. (AC ¶¶ 144, 164). What's more, Plaintiff was informed that a more qualified Black candidate for a position was rejected, based on her race, and was criticized by the hiring committee for a

presentation that was centered on racial disparities, when a similar white candidate was not similarly negatively perceived.  AC ¶¶ 169-171.

The racially hostile environment was so stressful that it required her to take a medical leave of absence (AC ¶ 162).

Considering the totality of the circumstance of her employment by CUNY, Plaintiff has sufficiently plead allegations to support her claim for a hostile work environment under CUNY and Defendants' motion to dismissed should be denied for this reason as well.

**c.**      **Plaintiff Has Stated a Claim for Retaliation**

"Retaliation claims under Title VII are also evaluated under a three-step burden shifting analysis."  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 (1973).  First, the plaintiff must establish a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Jute*, 420 F.3d at 173 (internal quotation omitted).

Title VII's anti-retaliation protection is broader than its anti-discrimination protection and "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).  The anti-retaliation provision applies broadly to "employer actions that would have been materially adverse to a reasonable employee or job applicant." *White,* 548 U.S. at 57.  Actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id; Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010).  While *White* establishes an objective standard, "[c]ontext matters…The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which

16

are not fully captured by a simple recitation of the words used or the physical acts performed." *White,* 548 U.S. at 68-69, (internal quotations omitted).  For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id.*

"In determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently "substantial in gross" as to be actionable. *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) citing *Zelnik v. Fashion Inst, of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006) ("[T]his ridicule was considered a part of a larger campaign of harassment which though trivial in detail may have been substantial in gross, and therefore was actionable.").

Plaintiff initiated several internal complaints, which each constitute protected activity. *Risco v. McHigh,* 868 F. Supp. 2d 75 (S.D.N.Y. 2010).  First made internal complaints about her disparate treatment in the summer of 2019 to Defendant Sohler, who indicated she would report it to CUNY HR. AC ¶ 63. Shortly thereafter in July 2019, within days of her second adverse and discriminatory interaction with Defendant McBeth, she also complained to Cornell Clarke of CUNY Human Resources and The Chief Diversity officer, and Carol Huang, a representative of the Professional Staff Congress, among other. AC ¶ 72.  Defendant McBeth was aware of at least some of these complaints because he approached Plaintiff about them about a month later. AC ¶ 73.  In June of 2019, prior to her complaints about racism and preferential treatment for a racially hostile student, Plaintiff had been told that in her position as clinical director of the EHS course that she would make the determination about how to manage AP's grade and status in the required EHS course.  AC ¶ 76.  However, in November of 2019, Plaintiff learned that Defendants had covertly acquiesced to AP and circumvented Plaintiff's management of her course as Course

Director. AC ¶ 74.  Defendants changed course on this prior representation to Plaintiff only after, and in close proximity to Plaintiff's complaints all in the summer of 2019. Subsequently, in August 2019 and continuing through the March 2020 review of Plaintiff which contained knowingly false information (AC ¶ 145), Plaintiff was subject to escalating administrative demands, scrutiny of her performance and ultimately termination.  This escalation, in close temporal proximity to Plaintiff's first complaints of discriminatory treatment and complaints of favorable treatment of a racially animus student, AP, would reasonable discourage a similarly situated employee from making a similar complaint and thus are sufficiently material employment actions to support a claim for retaliation.

Further, Plaintiff's complaints to Defendant Friedman and the Assistant Dean of Diversity Equity and Inclusion, regarding the false January 2020 review by Defendant Sohler are also protected activity.  While Defendants urge that Plaintiff has not alleged with sufficient particularity that her complaint was about discrimination, it is plain from her pleading that her concerns about Defendants Sohler and McBeth that she raised with Defendant Friedman, and later also the January 13th letter  that Plaintiff raised with the Assistant Dean of Diversity, are because of the discrimination described in her pleading and the false contents of the January 13th letter which amplified the underlying discrimination was involved in each event documented in the letter. These complaints occurred approximately three months and two months before she was notified of her non-reappointment and terminated.  Thus, the temporal proximity of her termination also supports an adequately pled claim for retaliation by CUNY and Defendants' motion should be dismissed for this reason a well.

## II.     PLAINTIFF STATES CLAIMS AGAINST CUNY UNDER TITTLE VI

In determining whether Plaintiff's treatment at CUNY violated Title VI, the Court is guided by the analysis developed under Title VII. *Koumantaros v. City Univ. of New York,* 03-cv-10170, 2007 WL 840115, at *5 (S.D.N.Y. 2007) Plaintiff claims that (1) she was dismissed from the Program because of her race; (2) defendant retaliated against her for engaging in protected activity under Title VI; and (3) defendant maintained a racially hostile educational environment. Accordingly, having stated her claims for relief under Title VII, as discussed at Point I, *supra*, Plaintiff has stated a claim under Title VI as well.

Defendants urge that Plaintiff's claims are barred because Title VI protections are only afforded, where the primary objective of the federal financial assistance is for the purpose of employment. Def Br. p. 21.  Not only does Plaintiff expressly allege that she is the intended beneficiary of the undisputed federal aid awarded to CUNY (AC ¶ 15, 193), but Defendants' argument ignores part of the essential application of Title VI.

Title VI also applies where there is a causal nexus between employment discrimination and discrimination against beneficiaries; that is, the employment discrimination infects the beneficiaries' entitlement of the recipient's services, programs, and activities. *Caulfield v. Bd. of Educ.*, 486 F. Supp. 862, 876 (E.D.N.Y. 1979) (characterization of infection theory where employment practices affect beneficiaries, i.e., students) *compare Lanzo v. City of New York*, 2000 WL 804628, at *3 (E.D.N.Y. May 18, 2000) (dismissing Title VI claims, where plaintiff had failed to allege either that her employment was the primary purpose of the federal funding or that her discrimination effected the intended beneficiaries.), *see also* 34. C.F.R. § 100.3 (a), (c)(1) and (c)(3).

Here, Plaintiff clearly alleges that she, the CUNY Medical School, other faculty, students and the community the Medical School is intended to serve are the intended beneficiaries of the federal

funding received by CUNY.  AC ¶¶15, 193.  This is not merely a conclusory representation but is supported by pled facts:  The Medical School's stated mission is to improve health care in underserved communities.  AC ¶ 18.  Its enrollment is 53% underrepresented minority groups, the near inverse of the national average of 59% white student enrollment, with the most striking difference that the Medical School's enrollment is 35% Black, five times the national average according to CUNY. AC ¶¶ 16-17.  Further, Plaintiff was hired as the Course Director of the EHS course, a required course as part of an intensive three-year sequence of course in Community Health and Social Medicine. AC ¶ 22.  It is a reasonable inference that, as Plaintiff alleges, the discrimination that she encountered in her employment, including the hostile work environment, racial harassment by a student and CUNY's subordination of that the student's acknowledged bias, have adverse effects on all of the intended beneficiaries of the federal funding received by the Medical School.  Accordingly, Plaintiff has properly stated claims under Title VI and Defendants' motion to dismiss should be denied for this reason as well.

### III.    PLAINTIFF STATES CLAIMS FOR EMPLOYMENT DISCRIMINATION AGAINST INDIVIDUAL DEFENDANTS UNDER FEDERAL LAW

#### a.    <u>Plaintiff's Section 1981 Claims</u>

Although the Eleventh Amendment generally bars suits against state officials when "the state is the real, substantial party in interest," regardless of whether a party seeks damages or injunctive relief, *Pennhurst State Sch. Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984), the doctrine described in *Ex Parte Young*, 209 U.S. 123 (1908) provides an exception to this rule. *Pennhurst* at 102-03. "[T]he Eleventh Amendment does not bar suits seeking prospective relief against state officials acting in violation of federal law because such action is not considered an action of the state." *Burnette v. Carothers*, 192 F.3d 52, 57 n. 3 (2d Cir. 1999) internal citations omitted). An important exception to Eleventh Amendment immunity provides that suits

challenging state official's action, in that actor's official capacity, which seek a prospective, injunctive remedy are not considered claims against the state. *Kulkarni v. City Univ. of New York*, 2001 WL 1415200, at *6 (S.D.N.Y. Nov. 13, 2001) (permitting § 1981 and § 1983 (Defendants' motion to dismiss plaintiff's § 1981 and § 1983 claims for prospective injunctive relief against the individual defendants denied); *Loren v. Levy*, 2001 WL 921173, at *5 (S.D.N.Y. Aug. 14, 2001) (permitting § 1983 claim for reinstatement to proceed). Here, Plaintiff requests injunctive relief against the Defendants and thus, in seeking prospective, injunctive relief against the Individual Defendants in their official capacity are not barred.  *Miles v. Baruch College,* 07-cv-1214, 2008 WL 222299, at *4 (E.D.N.Y. January 25, 2008) (declining to dismiss on Eleventh Amendment immunity grounds, claims against state officials under § 1981 and § 1983 at *10-11 (E.D.N.Y. Jan. 24, 2008); *Loren v. Levy*, 2001 WL 921173, at *5 (claim against CUNY officials); *Chinn v. City Univ. of New York Sch. of Law*, 963 F. Supp. 218, 225 (E.D.N.Y. 1997) (same).  Thus, Plaintiff having plead the requisite facts and relief, Defendants' motion to dismiss these claims should be denied as well.

    **b.**    <u>Plaintiff's Section 1983 Claims</u>

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Falcon v. City Univ. of N.Y.*, 15-cv-3421 (ADS)(ARL), at *22-23 (E.D.N.Y. July 15, 2016), citing *Back v. Hastings On Hudson Union Free Sch. Dist., 3*65 F.3d 107, 122 (2d Cir. 2004).  A liable state actor must also have personal involvement in the alleged discrimination. *Id.* "Personal involvement" for purposes of Section 1983 may be shown, among other ways, by evidence that the defendant participated directly in the alleged violation, that defendant, after being informed of the violation, failed to remedy the wrong; that the defendant created a policy or custom under which unlawful practices occurred, allowed the continuance of

such a policy or custom; or that the defendant was grossly negligent in supervising subordinates who committed the wrongful acts. *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted)).

Here, Plaintiff's pleading details regular discriminatory interactions with Defendant Sohler, multiple discriminatory actions by Defendant McBeth (*e.g.,* AC ¶¶60, 64, 65, 71, 75, 160), and complaints about this discrimination to the Dean of the Medical School, who was dismissive of Plaintiff and took no action to investigate, much less correct the discriminatory environment that was reported to her ((*e.g.,* AC ¶¶ 138, 139, 160). All the Individual Defendants were members of the all-white Executive Faculty Committee that terminated Plaintiff. AC ¶ 160. Such allegations are sufficient to state claims against the Individual Defendants under Section 1983 Compare *Falcon v. City Univ. of N.Y.,* 15-cv-3421 (ADS) (ARL), 2016 WL 3920223 (E.D.N.Y. July 15, 2016) (Finding no individual liability in the absence of allegations in the proposed pleading that any of the Individual Defendants took part in the adverse employment decisions, nor that Plaintiff complained to the particular Individual Defendants.) For this reason, also, Defendants' motion to dismiss should be denied.

## IV. PLAINTIFF STATES CLAIMS FOR EMPLOYMENT DISCRIMINATION AGAINST INDIVIDUAL DEFENDANTS UNDER STATE AND LOCAL LAW

### a. Plaintiff's New York State Human Rights Law Claims

A state employee may be held liable in his or her individual capacity under N.Y. Executive Law § 296(6) for aiding, abetting, inciting, compelling or coercing a discriminatory act forbidden by the SHRL. *See Dodd v. CUNY,* 489 F.Supp.3d 219, 269-70 (S.D.N.Y. 2020) (holding that a CUNY department chair could qualify as an aider or abettor), *Bonaffini v. City Univ. of N.Y.,* No. 20 Civ. 5118 (BMC), 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) (holding that a CUNY provost could qualify as an aider or abettor). *Allessi v. N.Y. State Dept. of Corr. & Cmty. Supervision*, 16 F. Supp. 3d 221, 226 (W.D.N.Y. 2014) (holding a state employee may be held

liable in his or her individual capacity under SHRL for aiding, abetting, inciting, compelling or coercing a discriminatory act forbidden by SHRL) (c*iting Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) ; *Nunez v. Cuomo*, 11-cv-3457, 2012 WL 3241260, *20 (E.D.N.Y. Aug. 7, 2012); *Smith v. State Univ. of N.Y.*, 00-cv-1454, 2003 WL 1937208, *7 (N.D.N.Y. Apr. 23, 2003).

"An individual can be liable under the [SHRL] so long as s/he actually participates in the conduct giving rise to a discrimination claim." *Edwards v. Jericho Union Free Sch. Dist.,* 904 F.Supp.2d 294, 304 (E.D.N.Y. 2012) (internal quotations omitted). Further, under this framework, even "a co-worker who actually participates in the conduct giving rise to a discrimination claim can be held individually liable as an aider and abettor." *Bonaffini v. City Univ. of N.Y.*, 20-cv-5118 (BMC), 2021 WL 2895688, at *2 (E.D.N.Y. July 9, 2021) (internal quotation omitted).

As discussed in Point II *supra*, each of the Individual Defendants participated in the discriminatory conduct alleged by Plaintiff. Thus, having plead the participation of the Individual Defendants, Plaintiff has stated claims against them and Defendants' motion to dismiss should be denied.

**b.   Plaintiff's New York City Human Rights Law Claims**

"[CHRL] claims are to be reviewed more liberally than Title VII claims, and the provisions of the [CHRL] must be construed broadly in favor of plaintiffs alleging discrimination." *Levy v. Legal Aid Soc'y*, 408 F.Supp.3d 209, 217 (E.D.N.Y. 2019) (quoting *Johnson v. Andy Frain Servs., Inc.*, 638 Fed.Appx. 68, 71 (2d Cir. 2016) (summary order)); *see also Williams v. N.Y.C. Transit Auth.*, 97 N.Y.S.3d 692, 695-96 (2d Dept. 2019).  Because the CHRL standards are more liberal than the corresponding federal and state law standards, courts must analyze CHRL claims "separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109. CHRL's retaliation provision is broader than Title VII's—protecting plaintiffs who "oppos[e] any practice forbidden under" the law from conduct "reasonably likely to deter a person engaging in

such action." *Mihalik,* 715 F.3d at 112; *see also* N.Y.C. Admin. Code § 8–107(7). To plead a discrimination claim under the CHRL, Plaintiff must allege only that "she [was] treated 'less well' ... because of a discriminatory intent." *Mihalik,* (2d Cir.2 013) at 110 (citing *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dept. 2009)). "[T]he challenged conduct need not even be 'tangible' (like hiring or firing)." *Id.* (quoting *Williams*, 872 N.Y.S.2d at 40); *see also Wolf v. Time Warner, Inc.*, *548 Fed.Appx. 693, 696* (2d Cir. 2013) (summary order) ("To state a claim for discrimination, a plaintiff must only show differential treatment of any degree based on a discriminatory motive.").

However, the same standards of analysis used to evaluate aiding and abetting claims under the SHRL apply to such claims under the CHRL because the language of the two laws is virtually identical. *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308 (JSR), 2011 WL 2119748 (S.D.N.Y. May 23, 2011); *Stevens v. State*, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009).  Accordingly, as descried *supra,* the Individual Defendants are not immune from liability under the CHRL and may be held personally liable as aiders or abettors. *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 269 (S.D.N.Y. 2020).

Applying this even more liberal standard, it is plain that Plaintiff has adequately plead claims against the Individual Defendants, who each personally participated in discrimination, as described *supra* at Point I, and thus could be found to have aided and abetted the discrimination. Accordingly, Defendants' motion to dismiss should be denied on this basis as well.

## **CONCLUSION**

For the forgoing reasons, Plaintiff avers that her Amended Complaint has sufficiently stated claims and requests that the Court deny the Defendants' motion to dismiss in its entirety and for such other and further relief as the Court may deem just and proper.

Dated:  May 20, 2022
      New York, New York

                                   Respectfully submitted,

                                   JASPER & JASPER, PLLC
                                   *Attorneys for Plaintiff*
                                   BY: /s/ Zoë E. Jasper
                                       Zoë E. Jasper
                                   17 State Street; Suite 4000
                                   New York, New York 10004
                                   212.634.9949
                                         zoe@jasperpllc.com