UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FAITH MILLER-SETHI,

                              Plaintiff,

            -v-

CITY UNIVERSITY OF NEW YORK,
DANI MCBETH, NANCY SOHLER,
and ERICA FRIEDMAN,

                              Defendants.

21-CV-8591 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

        Plaintiff Faith Miller-Sethi, a former clinical professor and course director at the City of

New York School of Medicine ("CUNY" or "the Medical School"), brings this action against

CUNY and three of its employees.  She brings claims of disparate treatment, hostile work

environment, and retaliation against CUNY pursuant to Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e *et seq*. and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-d *et

seq*.  She brings parallel claims against the individual defendants, Dani McBeth, Nancy Sohler,

and Erica Friedman, pursuant to 42 U.S.C. §§ 1981 and 1983; the New York State Human Rights

Law (NYSHRL), N.Y. Exec. L. §§ 290 *et seq*.; and the New York City Human Rights Law

(NYCHRL), N.Y.C. Admin. Code §§ 8–107 *et seq*.  Miller-Sethi claims that Defendants

discriminated against her on the basis of her race in a series of events that ultimately led to the

Medical School's decision not to reappoint her to her teaching position.  She further alleges that

she was subjected to a hostile work environment due to administrators' tolerance of racially

charged comments and behavior from students, and that she experienced retaliation after she

reported mistreatment to Medical School administrators.

Defendants have moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, their motion is granted in part and denied in part.

## I.    Background

The following facts are drawn from the amended complaint (Dkt. No. 31) and are assumed true for purposes of the pending motion to dismiss.

### A.    The Parties

Plaintiff Faith Miller-Sethi, who identifies as a Black woman of African-American descent, was hired in January 2019 to serve as a clinical professor and course director for the Evaluation in Healthcare Settings (EHS) course within the Medical School.  (*Id.* ¶ 2.)  Her initial appointment ran from January 2019 through August 2019, with the prospect of having her appointment renewed up to a total of seven years.  (*Id.* ¶ 26.)  The individual defendants are Dani McBeth, the Associate Dean of Student Affairs at the Medical School; Nancy Sohler, associate medical professor at the Medical School, Interim Department Chair of the Community Health and Social Medicine Department (CHASM), and Plaintiff's supervisor; and Erica Friedman, who was at relevant times the Interim Dean of the Medical School.  (*Id.* ¶ 20.)

### B.    Plaintiff's Employment at the Medical School

Plaintiff's role involved facilitating student field placements in various community-based health centers in the greater New York City area, supervising students, communicating with partners at the community sites, and teaching the EHS course.  (*Id.* ¶ 25.)  After her initial period of employment, Plaintiff was reappointed for the first time in March 2019, for the period covering August 27, 2019 to August 25, 2020.  (*Id.* ¶ 45.)

#### *Student Complaints*

Plaintiff alleges that the discriminatory treatment began in June 2019.  At that time, a community site partner notified Plaintiff that a student, referred to in the amended complaint as

"AP," would not be permitted to keep working at the site due to her disruptive behavior.  (*Id.* ¶ 56.)  Plaintiff had previously offered AP a placement in the Bronx, which AP "refused" because "she was not comfortable working in that area."  (*Id.* ¶ 58.)  Plaintiff attributes AP's refusal to the fact that she was "openly hostile to the racial makeup of the communities targeted by the EHS program."  (*Id.*)  Plaintiff offered AP an alternative placement in Long Island, which she also refused.  Following complaints from AP, McBeth called Sohler and Plaintiff into his office and delivered a "tongue lashing" to Plaintiff, telling her, "You don't know Long Island." (*Id.* ¶ 61.)  Later, another incident involving AP led to a "scathing" email from McBeth to Plaintiff, faulting her for the situation.  (*Id.* ¶ 71.)  Plaintiff believed that both AP's behavior and McBeth's treatment of her were motivated by racism.  She reported McBeth's handling of the AP situation to CUNY's Human Resources Department, the Chief Diversity Officer, and a representative of the Professional Staff Congress.  (*Id.* ¶ 72.)  Later, despite having been told that she would decide whether AP would receive a passing grade in the course, Sohler informed Plaintiff that she and other administrators had allowed AP to pass the course, despite AP's having never completed the required fieldwork.  (*Id.* ¶¶ 74-78.)  Plaintiff felt that that decision undermined her as Course Director and rewarded AP's racist misconduct, and that no non-Black professors were subject to similar "undermining treatment."  (*Id.*; *id.* ¶ 80.)

Plaintiff further alleges that seven students submitted negative course reviews following the AP incident, not because of any valid concerns, but as part of a campaign against her following her decision to allow AP to be dismissed from her site placement.  (*Id.* ¶ 88.)  Sohler acknowledged to Plaintiff that the student complaints were not legitimate or substantiated.  (*Id.* ¶ 87.)

Separately, Plaintiff faced a situation where four students were dismissed from a community site in the Bronx due to bullying allegations.  Plaintiff met with each student in her office.  Plaintiff was later reprimanded for notifying students directly of their dismissals through these meetings, purportedly because she violated the code of conduct regarding student privacy and discipline.  Meanwhile, a white colleague whom she asked to sit in on the meetings, Dr. Erica Lubetkin, received no such reprimand.  (*Id.* ¶¶ 81-85.)  Sohler later criticized Plaintiff for failing to enforce the Medical School's attendance policy and breaching student confidentiality after supporting a different student through an emergency; Plaintiff alleges that no non-Black faculty received the same degree of scrutiny over minor issues.  (*Id.* ¶¶ 107-110.)

### Course Load and Administrative Tasks

While all CHASM faculty are required to facilitate problem-based learning ("PBL") sessions, Plaintiff alleges that Sohler demanded that she teach more PBL sessions than non-Black faculty.  (*Id.* ¶¶ 93-95.)  She also accuses Sohler of requesting a level of "tedious and redundant reporting" regarding her community site work that was never required of previous faculty in Plaintiff's position, as well as imposing false deadlines forcing her to "scramble to complete non-pressing tasks."  (*Id.* ¶¶ 114-18, 132.)  Plaintiff further alleges that Sohler reprimanded her for submitting grades late, without justification.  (*Id*. ¶¶ 49-55.)

Plaintiff also alleges that she was denied funding to attend professional conferences, while non-Black colleagues received it.  (*Id.* ¶¶ 119-22.)

### Formal Reprimands and Complaints

In December 2019, after "repeated requests" to meet with Friedman, Plaintiff met with her to discuss her concerns about Sohler and McBeth.  Friedman advised her to overlook McBeth's "Irish temper" and refused to discuss Plaintiff's other complaints.  (*Id.* ¶ 139.)

Plaintiff alleges that at least one other Black faculty member made similar complaints to Friedman and Sohler, which did not lead to action from either.  (*Id.* ¶ 140.)  During the same month, Plaintiff met with the Assistant Dean of Diversity, Equity, and Inclusion and the Chief Diversity Officer to report these concerns.  (*Id.* ¶ 141.)

On January 13, 2020, Sohler sent Plaintiff a letter ("the January 13 letter") reprimanding her for a litany of issues, which Plaintiff labels as "six fabricated failures": submitting late grades, failing to properly handle the dismissal of AP for cause, receiving multiple accusations of student mistreatment, failing to give mid-course feedback, and failing to follow attendance and confidentiality rules.  (*Id.* ¶ 151.)   According to Plaintiff, Sohler knew the letter contained misrepresentations and falsehoods.  Plaintiff filed a complaint with Friedman and the Assistant Dean of Diversity, Equity, and Inclusion immediately after receiving the letter.

In March 2020, Sohler wrote Plaintiff's Annual Review, which Plaintiff alleges contained "knowingly false allegations" about her performance, reiterating the same content from the January 13 letter.  (*Id.* ¶ 145.)  The Review also criticized her for failing to do enough PBL work, despite non-Black faculty doing fewer hours of PBL work without issue, and failing to publish papers or pursue grants, even though no non-Black clinical faculty were expected to do so.  (*Id.* ¶¶ 148, 153.)  Sohler also asserted that she had no documentation about what Plaintiff was working on and that Plaintiff ignored her previous feedback, despite Plaintiff's assertions that she thoroughly responded to Sohler's reporting demands.  (*Id.* ¶ 157.)

On March 12, 2020, Plaintiff was notified that the Executive Faculty Committee had denied her reappointment.  Sohler, McBeth, and Friedman were members of the Committee. Plaintiff's termination was effective on August 26, 2020.  Plaintiff alleges that non-Black faculty

who had lower course evaluations, had received student complaints, had not published, and had submitted grades late were not terminated. (*Id.* ¶¶ 160-63.)

Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission on July 22, 2021. (Dkt. No. 31-1.) She filed this case on October 19, 2021.

## II.    Legal Standard

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all facts alleged in the Complaint as true and draw all reasonable inferences in favor of the non-moving party. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). To withstand the motion to dismiss, a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where, however, a plaintiff levies claims of employment discrimination, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

### III.    Discussion

#### A.    Title VII

Plaintiff brings three claims against CUNY under Title VII: disparate treatment based on race and color (count 1), hostile work environment based on race (count 2), and retaliation (count 3).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . . "  42 U.S.C. § 2000e–2(a)(1).  This provision prohibits intentional discrimination (disparate treatment), "facially neutral practices that have a disparate impact on protected groups" (disparate impact), *Wright v. Stern*, 450 F.Supp.2d 335, 367 (S.D.N.Y. 2006) (citations omitted), and a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (hostile work environment).  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and quotations omitted).  Title VII also prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter . . . or because he has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

An employer is liable under Title VII for violations committed by its managing employees while acting within the scope of their employment.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754–56 (1998) (citing Restatement (2d) of Agency § 219(1)).  "[T]angible employment actions" effectuated by a supervisor, "such as hiring, firing, failing to promote, [or] reassignment with significantly different responsibilities . . . become[ ] for Title VII purposes the

act of the employer." *Id.* at 760–62.  Title VII does not provide for individual liability.  *See Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam).

### 1.    Disparate Treatment

Plaintiff's race and color discrimination claim under Title VII is subject to the *McDonnell Douglas* burden-shifting test.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  At the motion to dismiss stage, however, a plaintiff need not plead a prima facie case of discrimination as contemplated under *McDonnell Douglas*.  *Vega*, 801 F.3d 72 at 85.  Instead, a plaintiff need only "plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  *Id.* at 86.  An adverse employment action for the purposes of Title VII discrimination claims occurs where a plaintiff "endures a materially adverse change in the terms and conditions of employment."  *Id.* at 85.

CUNY contests Plaintiff's discrimination claim by asserting that she identifies only a single adverse employment action—the Medical School's decision not to reappoint her—and fails to plausibly allege that it was motivated by discriminatory intent.  (Dkt. No. 39 at 11; Dkt. No. 45 at 1-2.)  The Court need not analyze each of the other potential adverse employment actions framed by Plaintiff because she has plausibly alleged that the reappointment decision was an adverse employment action motivated by discriminatory intent.

In determining whether a Plaintiff has met the plausibility requirement, "the court is to draw on its judicial experience and common sense."  *Vega*, 801 F.3d at 86 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679)).  Because there is rarely "direct, smoking gun, evidence of discrimination," a plaintiff may rely on "bits and pieces of information to support an inference of discrimination."  *Vega*, 801 F. 3d at 86.  At the initial stage of litigation, a plaintiff need only meet the "minimal" burden of plausibly alleging facts that provide "at least minimal support for

the proposition that the employer was motivated by discriminatory intent." *Id.* at 87 (cleaned up).  Where, as here, the plaintiff does not allege that the defendant made any expressly discriminatory statements, she may support an inference of discrimination by showing that similarly situated individuals received preferential treatment.  *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).  Those individuals must be similarly situated "in all material respects."  *Id.*  The meaning of "material respects" varies from case to case and includes "whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards" and "whether the conduct for which the employer imposed discipline was of comparable seriousness."  *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).  "Whether two employees are similarly situated ordinarily presents a question of fact for the jury."  *Graham*, 230 F.3d at 39. To survive a motion to dismiss, a plaintiff need only allege facts making it "plausible that a jury could ultimately determine that the comparators are similarly situated."  *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F.Supp.2d 679, 698 (S.D.N.Y. 2011).

CUNY asserts that Plaintiff's disparate treatment argument necessarily fails because she does not identify for comparison any Medical School employees who were similarly situated to her in terms of tenure, seniority, title, or responsibilities.  (*See* Dkt. No. 39 at 14; Dkt. No. 45 at 3-4.)  According to CUNY, a "generic allegation of disparate treatment related to an unspecified class of Caucasian persons" is insufficient to plausibly allege discriminatory intent.  *Id.* at 15 (quoting *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014)).

But Plaintiff alleges on information and belief that non-Black faculty in the Medical School and the CHASM Department who "received lower course evaluations than Plaintiff, received student complaints, submitted grades late, [and] did not publish any papers or engage in

other activities" were not terminated or otherwise sanctioned.  (Dkt. No. 31 ¶ 163.)  She also alleges that other clinical faculty were not penalized for failing to publish.  Plaintiff has thus sufficiently alleged that relevant comparators received preferential treatment based on similar types of conduct.  Even if other members of the CHASM Department or the clinical faculty differed from Plaintiff in certain aspects of their teaching load or job function (e.g., by engaging in less fieldwork or reporting to different supervisors), Plaintiff has alleged facts—albeit barely—making it plausible that a jury could ultimately determine that they shared *material* aspects of their employment at the Medical School.  *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001) (concluding that comparator employees need not be identically situated to plaintiff, but rather similarly situated in all *material* respects).

A more specific parsing of the ways in which other employees were or were not similarly situated to Plaintiff is a question of fact requiring discovery.  Indeed, also relevant to the analysis is the fact that information as to whether Plaintiff's comparators in fact engaged in the same purported conduct (late grade submission, student complaints, and lack of research) is in the hands of Defendants.  *See Moore v. City of New York*, No. 15-CV-6600 (GBD) (JLC), 2017 WL 35450, at *23 (S.D.N.Y. Jan. 3, 2017) (citing *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010) ("The Second Circuit has ruled that pleading on information and belief in employment discrimination suits can suffice to meet the relevant plausibility standard when the relevant facts are particularly within the possession, knowledge, and control of the defendant.")

Plaintiff's allegations, which must be assumed true at this stage, provide at least minimal support for a plausible inference that her race or color was a motivating factor in the Medical School's decision not to reappoint her.  CUNY's motion to dismiss count 1 is therefore denied.

## 2.     Retaliation

Next, the Court turns to Plaintiff's Title VII retaliation claim against CUNY.  To
adequately allege retaliation, "a plaintiff must give plausible support to the reduced prima facie
requirements of (1) participation in a protected activity; (2) that the defendant knew of the
protected activity; (3) an adverse employment action; and (4) a causal connection between the
protected activity and the adverse employment action." *Craven v. City of New York*, No. 19-CV-
1486 (JMF), 2020 WL 2765694, at *6 (S.D.N.Y. May 28, 2020).  To show a causal connection, a
plaintiff must plausibly allege that the retaliation was the "but-for" cause of the employer's
adverse action.  *Vega*, 801 F.3d at 90.

On the first factor, Plaintiff alleges that she engaged in protected activity on multiple
occasions: First, she reported a "scathing email" from McBeth to CUNY's Human Resources
department, Chief Diversity Officer, and a representative on the Professional Staff Congress in
July 2019.  (Dkt. No. 31 ¶ 72.)  Second, in December 2019, Plaintiff met with Friedman to
discuss her concerns about Sohler and McBeth.  (*Id.* ¶ 139.)  Third, she met with the Assistant
Dean of Diversity, Equity, and Inclusion and Chief Diversity Officer, "among others," later in
December 2019 to report that another African-American faculty member made similar
complaints to Friedman and Sohler.  (*Id.* ¶ 140.)  Fourth, Plaintiff complained to the Assistant
Dean of Diversity, Equity, and Inclusion and Friedman about the January 13 letter sent by
Defendant Sohler "immediately" after it was sent.  (*Id.* ¶ 138).

On the second factor, CUNY does not contest that it was aware of the four complaints
described above.

On the third factor, CUNY argues that the only adverse employment action for the
purposes of the retaliation claim is the Medical School's decision not to reappoint Plaintiff.
Conversely, Plaintiff argues that CUNY took multiple adverse employment actions against her:

In November 2019—after her July 2019 complaints—Defendants "covertly acquiesced to AP and circumvented Plaintiff's management of her course." (Dkt. No. 40 at 17.) In August 2019 and continuing through March 2020, Defendants subjected Plaintiff to "escalating administrative demands, scrutiny of her performance, and ultimately termination." (*Id.*)

As to the fourth factor, a plaintiff may establish the causal connection between her protected activity and the adverse employment action if the two are "very close" in time. *Mazurkiewicz v. New York City Health & Hosps. Corp.*, No. 09 CIV 5962 WHP, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated" to establish causation in discrimination and retaliation claims. *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). As CUNY points out, courts in this circuit have sometimes used a two-month window between the protected activity and the retaliatory action as the dividing line. *Id.* (citation omitted). But the Second Circuit has recognized claims based on longer time periods. *See, e.g., Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

Plaintiff has plausibly alleged retaliation. In January 2020, Plaintiff complained to the Assistant Dean of Diversity, Equity, and Inclusion and Friedman about "voluminous, disingenuous, and inaccurate statements" about her job performance contained in Sohler's January 13 letter, alleging that both officials "had already been long aware that Plaintiff was being subjected to harassing and disparate treatment" by Sohler and McBeth. (Dkt. 31 ¶ 138.)

This constituted protected activity.  Three months later, in March 2020, Plaintiff was notified

that she would not be reappointed to the teaching position.  The three-month gap between the

January complaint and the March employment decision is short enough, in light of all the alleged

circumstances, to support an inference of a causal relationship between the two.

CUNY counters that Plaintiff's January 2020 complaint was not protected activity within

the meaning of Title VII because "general complaints about a supervisor's treatment are not

protected activity," nor are "complaints about the accuracy of her supervisor's evaluation."  (Dkt.

No. 39 at 19; Dkt. No. 45 at 5).  In the Second Circuit, "protected activity" includes "informal

protests of discriminatory employment practices, including making complaints to management."

*Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).  A plaintiff may indeed fail to

meet her burden where her complaints are so generalized that her employer "could not

reasonably have understood that she was complaining of conduct prohibited by Title VII."  *Rojas*

*v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (cleaned up).  That is not

the case here: Plaintiff alleges that she "immediately" informed Friedman and the Assistant Dean

of *Diversity, Equity, and Inclusion* about the contents of the January 2020 letter and that both

were already aware of the "disparate treatment" she was receiving.  Plaintiff's complaint was

therefore sufficiently specific to apprise her employer that she was complaining of racial

discrimination that is prohibited by Title VII.

Finally, CUNY attempts to defeat Plaintiff's retaliation claim by arguing that retaliation

was not the but-for cause of her non-reappointment.  As CUNY explains it, "the EFC notified

Plaintiff that she was not reappointed ten days after Plaintiff received a 'poor Annual Review'

describing numerous issues with her work previously identified in the January 13 letter."  (Dkt.

No. 39 at 20).  In other words, the justification for the termination decision was not Plaintiff's

complaint about Sohler's letter, but instead the poor Annual Review—written by Sohler and encompassing the same material as the January 13 letter.  To allege but-for causation, a plaintiff need only show that "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 90.  Further, "[i]t is not enough that the retaliation was a 'substantial' or 'motivating factor.'" *Id.* at 90-91.  Plaintiff has alleged that the "issues with her work" listed in the Review, and previously described in the January 13 letter, were either known to Sohler to be inaccurate or fabricated, or else encompassed conduct that co-workers outside of her protected class were allowed to engage in without sanction.  Plaintiff has thus sufficiently alleged that the justification for the decision not to reappoint her was pretextual.

CUNY's motion to dismiss is therefore denied as to count two.

### 3.    Hostile Work Environment

Next, the Court turns to Plaintiff's Title VII hostile work environment claim against CUNY.

To plausibly allege a prima facie case of hostile work environment, a plaintiff must identify conduct that "(1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (cleaned up).  "Severity and pervasiveness are independent standards, only one of which the plaintiff must meet." *Zambrano–Lamhaouhi v. N.Y.C. Bd. of Educ.*, 866 F. Supp. 2d 147, 161 (E.D.N.Y. 2011) (citing *Pucino v. Verizon Comm'cns*, 618 F.3d 112, 119 (2d Cir. 2010)).  "Conduct alleged to have created a hostile work environment must be more than episodic; it must be sufficiently continuous and concerted in order to be deemed pervasive." *Dowrich–Weeks v. Cooper Square Realty, Inc.*, 535 Fed.Appx. 9, 13 (2d Cir. 2013).  Whether a work environment is sufficiently

severe or pervasive is determined by considering the totality of the circumstances. *Harris*, 510 U.S. at 23. A plaintiff must allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris*, 510 U.S. at 21).

As part of her claim, Plaintiff alleges that (1) she was a target of a campaign of harassment by AP, aided by other students, (2) Defendants failed to remedy or punish AP's behavior, (3) Defendants "verbally attack[ed]" Plaintiff in a meeting about AP, and (4) other students were permitted to submit negative and false feedback as part of AP's campaign against Plaintiff. (Dkt. No. 40 at 15.) Plaintiff also alleges that she was aware of other complaints from Black female faculty about the racially hostile work environment at the Medical School. (*Id.*) Finally, she alleges that the school permitted students to submit racist microaggressions as legitimate course feedback. (Dkt. No. 31 ¶ 97.)

Plaintiff has not sufficiently alleged that Defendants' conduct in relation to AP was objectively severe or pervasive enough to support a hostile work environment claim. While Defendants' handling of AP may have been frustrating to Plaintiff as an undermining of her authority in the workplace, and she may have perceived some of McBeth's comments as microaggressions, they were not objectively severe enough to alter the terms of her employment. Nor were the episodes sufficiently pervasive: Plaintiff's allegations center on three major incidents: the June 2019 meeting at which McBeth scolded Plaintiff in front of AP and Sohler, telling her "you don't know Long Island"; the July 2019 incident where AP accused Plaintiff of publicly embarrassing her, which led to a "scathing email from McBeth"; and the November 2019 conversation in which Plaintiff was informed that the administrators had circumvented her

to give AP a passing grade when she had never completed the course.  These incidents were episodic rather than continuous.

The same analysis applies to the student feedback.  The racially coded language described at paragraph 97 of the Amended Complaint, as well as the comments submitted by students after the AP incident, do not meet the severity threshold set by courts in this Circuit. *See, e.g.*, *Morrison v. United Parcel Serv.*, Inc., 2019 WL 109401, at *3 (S.D.N.Y. Jan. 4, 2019) ("One or two isolated uses of racially insensitive language are rarely sufficient, but rather, the plaintiff must demonstrate a steady barrage of opprobrious racial comments.") (cleaned up).

Finally, while Plaintiff alleges that other Black women faculty members raised similar complaints about the environment at the Medical School, she does not plead specific enough facts about their concerns that would allow a reasonable person to conclude that there was a hostile or abusive environment at the school.

Plaintiff has therefore failed to state a plausible claim for hostile work environment under Title VII.

### B.    Title VI

Plaintiff asserts the same disparate treatment, hostile work environment, and retaliation claims against CUNY under Title VI (counts 4, 5, and 6).  CUNY moves to dismiss these claims in their entirety because Plaintiff has failed to allege a sufficient connection to federal funds. Title VI provides that no person "shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Further, "nothing contained in [Title VI] shall be construed to authorize action under [Title VI] by any department or agency with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment."  *Id.*  In

16

other words, "[f]or a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment." *Verdi v. City of New York*, 306 F. Supp. 3d 532, 544 (S.D.N.Y. 2018) (citing *Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) (cleaned up)).

Here, Plaintiff fails to plead that the federal funds that CUNY receives are aimed primarily at providing employment. Instead, Plaintiff alleges that CUNY is a publicly funded university system that receives federal funding and that its discriminatory employment practices negatively impact the intended beneficiaries of its programs, including faculty such as herself. (Dkt. No. 31 ¶¶ 15, 193.) But this argument is beside the point: Plaintiff has not alleged a clear connection between CUNY's federal funding and employment, as opposed to any of the other purposes for which a university uses federal funding, such as research or student financial aid.

Alternatively, Plaintiff argues that Title VI applies where there is a "causal nexus" between the alleged employment discrimination and discrimination against the intended beneficiaries of the federal funding. But the case that Plaintiff cites for this proposition is not binding authority—nor does Plaintiff provide any citations showing this theory of liability has been otherwise adopted within this Circuit. (*See* Dkt. No. 40 at 19 (citing *Caulfield v. Bd. of Educ.*, 486 F. Supp. 862 (E.D.N.Y. 1979))).

Defendants' motion to dismiss is therefore granted as to counts 4, 5, and 6.

### C.    Individual Claims: Section 1981

The Court now turns to Plaintiff's claims against the individual Defendants, starting with § 1981 (counts 7, 8, and 9). Defendants argue that the § 1981 claims must be dismissed because the statute does not provide a separate private right of action against state actors. They are correct. *See Duplan v. City of New York*, 888 F.3d 612, 620-21 (2d Cir. 2018) ("Because § 1983

already provides a remedy against state actors, there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy."). *See also Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285-86 (S.D.N.Y. 2019) (finding that *Duplan* applies not only to claims against the municipality itself but also against individual municipal defendants sued in their individual capacities).

In response, Plaintiff argues that her § 1981 claims against the individual Defendants are not barred to the extent that she seeks prospective, injunctive relief based on action taken in each Defendant's official capacity. (Dkt. No. 40 at 21.) Specifically, Plaintiff has moved for injunctive relief restoring her position and job duties. (Dkt. No. 31 at 55.) Indeed, under *Ex parte Young*, a plaintiff may sue a state official acting in her official capacity for prospective, injunctive relief from violations of federal law. *Blamah v. New York*, No. 19-CV-9234 (PMH), 2020 WL 1812690, at *5 (S.D.N.Y. Apr. 8, 2020) (citing *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007)). But the *Ex parte Young* doctrine does not supersede the threshold issue: "§ 1983 constitutes the <u>exclusive</u> federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 247 (S.D.N.Y. 2020) (quoting *Duplan*, 888 F.3d at 619 (emphasis added)). A plaintiff cannot bring a standalone § 1981 claim against a state actor; § 1983 is the required mechanism for seeking relief. This is not a case where the § 1981 claim remains viable because the plaintiff has properly framed it as being brought pursuant to § 1983. *See, e.g.*, *Colon v. City of New York*, No. 19-CV-10435, 2021 WL 4943552, at *8 n.3 (S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted*, 2021 WL 4427169 (S.D.N.Y. Sept. 26, 2021) ("Defendants' argument that Colon's Section 1981 claims should be dismissed for lack of

a private right of action, is incorrect, because Colon has framed his claims as Section 1981 violations brought pursuant to Section 1983.)

Defendants' motion to dismiss is therefore granted as to counts 7, 8, and 9.

### D.    Individual Claims: Section 1983

Plaintiff brings disparate treatment, hostile work environment, and retaliation claims against the individual Defendants pursuant to Section 1983 and the Equal Protection Clause of the Fourteenth Amendment to the Constitution (counts 10, 11, and 12). "Public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega*, 801 F.3d at 87. To state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution and laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *Id.* at 88.

The parties do not dispute that the individual Defendants were acting under color of state law in their official roles at CUNY. Instead, Defendants argue that Plaintiff's § 1983 claims must be dismissed because she does not plausibly allege that each of them was personally involved in an adverse employment action taken against her, or that they acted with retaliatory or discriminatory motives. An individual can be held liable under § 1983 "only if they are personally involved in the alleged deprivation." *Littlejohn*, 795 F.3d at 314. Personal involvement may be shown through evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (cleaned up).

### 1.    Hostile Work Environment

Once the color of law requirement is met, the analysis for a hostile work environment claim under § 1983 is identical to the Title VII analysis. *Fellah v. City Univ. of New York*, No. 20 Civ. 6423 (JPC), 2022 WL 4619902, at *9 (S.D.N.Y. Sept. 30, 2022).

Plaintiff's hostile work environment claim under Title VII was dismissed because the discriminatory conduct she alleged was not severe or pervasive enough to make out a prima facie case.  The Court need not reach the issue of personal involvement as to the analogous claim under Section 1983 because the same outcome applies here: Plaintiff has not pleaded facts showing conduct severe or pervasive enough on the part of any individual Defendant to make out a hostile work environment claim.  The § 1983 hostile work environment claims against the individual Defendants are therefore dismissed.

### 2.    Disparate Treatment

Similarly, aside from the color of law requirement, a § 1983 equal protection claim parallels the Title VII claim.  *Vega*, 801 F.3d at 88.  The disputed issue here is whether Plaintiff has adequately pleaded that each of the individual Defendants was personally involved in an adverse employment action taken against her, where her race was a motivating factor.  The Court must assess each Defendant's conduct individually.

**Sohler**

Plaintiff's most relevant allegations involving Sohler are that she wrote a feedback letter containing misrepresentations and falsehoods and later repeated them in a negative Annual Review, which would become the primary stated justification for the Medical School's decision not to reappoint Plaintiff.  An adverse employment action is a "materially adverse change in the terms and conditions of employment . . . which is more disruptive than a mere inconvenience or

alteration of job responsibilities." *Vega*, 801 F.3d at 85.  An annual review riddled with

falsehoods can be an adverse employment action.  This is not a case where a negative

performance evaluation and other reprimands do not qualify as adverse employment actions

because the plaintiff "suffered no demotion, material loss of benefits, or significantly diminished

material responsibilities." *E.g. Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656,

678 (S.D.N.Y. 2011).  To the contrary, Defendants argue that Plaintiff's poor Annual Review

was the *reason* that she was not reappointed.  (Dkt. No. 39 at 20.)  It led directly to a materially

adverse change in Plaintiff's employment—she ultimately lost her position when she had

previously had the chance for renewal for up to five additional years.

Plaintiff has also adequately pleaded that Sohler's actions were "because of" Plaintiff's

race.  Plaintiff need only plausibly allege that her race was a "substantial" or "motivating" factor

in Sohler's actions.  *Vega*, 801 F.3d at 85-86.  Plaintiff does so by alleging that Sohler subjected

her to reprimand and criticism for conduct for which she did not sanction similarly situated non-

Black employees under her supervision in the CHASM Department.

Plaintiff has sufficiently alleged Sohler's personal involvement in conduct that amounted

to discrimination based on race, in violation of § 1983.

**McBeth**

Plaintiff's allegations against McBeth generally center on his failure to impose

disciplinary procedures against AP, his reprimand of Plaintiff based on her interactions with AP,

and his membership on the Executive Faculty Committee.  (Dkt. No. 40 at 22.)  Plaintiff fails to

make out a prima facie case for unlawful discrimination for two reasons: First, the claims

relating to AP do not represent an adverse employment action—the undermining of Plaintiff's

authority as it related to one student is not sufficient to show a material change in the terms of

her employment.  Second, while Plaintiff's non-reappointment *was* an adverse employment

action, Plaintiff does not sufficiently allege McBeth's personal involvement.  While McBeth was

a member of the Executive Faculty Committee, Plaintiff does not plead facts showing that

McBeth was actively involved in the decision not to reappoint her.

**Friedman**

Plaintiff's allegations against Friedman generally state that she "was dismissive of

Plaintiff and took no action to investigate, much less correct, the discriminatory environment that

was reported to her."  (Dkt. No. 40 at 22.  *See also, e.g*, Dkt No. 31 ¶¶ 138-40.)  To plausibly

plead liability under § 1983, Plaintiff must show that Friedman was informed of the allegedly

discriminatory conduct and failed to take remedial action.

Plaintiff alleges that she complained to Friedman about Sohler's conduct on two

occasions.  First, in December 2019, Plaintiff asked for a meeting to air her concerns about

Sohler (and McBeth).  During the meeting, Friedman "merely advised Plaintiff to 'just overlook

[McBeth's] Irish temper' and refused to discuss anything further."  Second, Plaintiff complained

to Friedman about the January 2020 letter from Sohler immediately after she received it, stating

that Friedman "had long been aware" that she was subject to "harassing and disparate treatment"

by Sohler and McBeth.  (*Id.* ¶ 138.)  Plaintiff's description of the December 2019 meeting is too

vague to support a finding that Friedman was notified of Sohler's purported discriminatory

conduct and failed to act.  On the other hand, Plaintiff has established that Friedman failed to

take remedial measures after being informed that the January 13 letter contained "voluminous,

disingenuous, and inaccurate statements" as a result of the "disparate treatment" she received

from Sohler.  This is enough to plausibly plead liability under § 1983.  *Cf. Lewis v. Roosevelt*

*Island Operating Corp.*, 246 F. Supp. 3d 979, 993 (S.D.N.Y. 2017) (finding plaintiff had pleaded

sufficient facts to support an inference that supervisor intentionally discriminated against Plaintiff by failing to remedy employee's wrongs, despite being put on notice).

Accordingly, the § 1983 disparate treatment claims are dismissed as against McBeth, but survive as against Sohler and Friedman.

### 3.    Retaliation

To state a retaliation claim under § 1983, as under Title VII, a plaintiff must plausibly allege that: "(1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination." *Vega*, 801 F.3d 72 at 91.

The Court need not repeat its earlier analysis; the only plausibly pleaded adverse employment action that would permit an inference of retaliation was the decision not to reappoint Plaintiff.  Plaintiff has not adequately alleged that Sohler, McBeth, or Friedman was personally involved in the decision not to reappoint her—mere membership in the EFC is insufficient to draw a connection between Plaintiff's protected activity and any action taken by the individual Defendants.[1]

 Accordingly, the § 1983 retaliation claims against the individual Defendants are dismissed.

### E.    Individual Claims: New York State Human Rights Law

Plaintiff brings counts 13, 14, and 15 against the individual Defendants under the New York State Human Rights Law (NYSHRL).  NYSHRL claims are "analytically identical" to

---

[1] Plaintiff also gestures toward an additional retaliatory action from McBeth: his "reported dissatisfaction with Plaintiff's" handling of a disciplinary incident.  (Dkt. No. 31 at 85.)  But McBeth's "dissatisfaction" is not an adverse employment action because it, on its own, did not materially alter the terms of Plaintiff's employment.

Title VII claims, using the same standard of proof.  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019).

Defendants correctly argue that Plaintiff's NYSHRL claims must fail because Plaintiff has failed to satisfy a threshold requirement: alleging that the employer, CUNY, is liable for the allegedly discriminatory practice under the NYSHRL.  Plaintiff must allege liability on CUNY's part because her NYSHRL claims rest on an aiding and abetting theory.  A state employee may be held liable for aiding, abetting, inciting, compelling or coercing a discriminatory act forbidden by the NYSHRL.  *See, e.g.*, *Dodd v. City Univ. of New York*, 489 F.Supp.3d 219, 268 (S.D.N.Y. 2020).  Importantly, "it is the *employer's* participation in the discriminatory practice which serves as the predicate for the imposition of liability on others for aiding and abetting."  *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472 (1998) (emphasis added).

Here, Plaintiff does not assert any NYSHRL claims against CUNY at all—they are pleaded only against the individual Defendants.  Because Plaintiff did not bring any NYSHRL claims against CUNY, she has plainly failed to allege that CUNY engaged in any discriminatory practice under the NYSHRL.

Defendants' motion to dismiss counts 13, 14, and 15 is therefore granted.

### F.    Individual Claims: New York City Human Rights Law

Finally, Plaintiff brings claims against the individual Defendants under the New York City Human Rights Law (NYCHRL) (counts 16, 17, and 18).

In their motion to dismiss, Defendants argue that because New York State has not waived its sovereign immunity as to NYCHRL claims, Plaintiff's claims are barred.  The Court does not address the substance of this issue because Plaintiff failed to contest Defendants' sovereign immunity argument in her opposition brief.  Her opposition argues that an aiding and abetting theory of liability is possible under the NYCHRL, but offers no discussion of Defendants'

sovereign immunity defense, despite that defense being a substantial part of Defendants'

briefing.  "It is well settled in the Second Circuit that [a] plaintiff's failure to respond to

contentions raised in a motion to dismiss claims constitute an abandonment of those claims."

*New York State Ct. Clerks Ass'n v. Unified Ct. Sys. of the State of New York*, 25 F. Supp. 3d 459,

469 (S.D.N.Y. 2014) (collecting cases) (cleaned up).  This is "an independent basis for

dismissal."  *Id.*

Defendants' motion to dismiss counts 16, 17, and 18 is therefore granted.

## IV.     Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and

DENIED in part.

As against CUNY, the Title VII disparate treatment and retaliation claims survive the

motion to dismiss.  The Title VII hostile work environment claim is dismissed, as are all of the

Title VI claims.

As against Sohler, the § 1983 disparate treatment claim survives. All other claims are

dismissed.

As against McBeth, all claims are dismissed.

As against Friedman, the § 1983 disparate treatment claim survives. All other claims are

dismissed.

Defendants shall file an answer to the remaining claims within 21 days after the date of

this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 37 and to terminate Defendant McBeth as a party.


SO ORDERED.

Dated: January 26, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge